David B. Shemano (State Bar No. 176020)
*dshemano@pwkllp.com*
PEITZMAN, WEG & KEMPINSKY LLP
10100 Santa Monica Blvd., Suite 1450
Los Angeles, CA  90067
Telephone: (310) 552-3100
Telecopier: (310) 552-3101

Attorneys for David K. Gottlieb, Chapter 7 Trustee
for the estate of Passport International Entertainment LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>PASSPORT INTERNATIONAL<br>ENTERTAINMENT LLC,<br><br>                          Debtor. | Case No. 1:08-BK-13319-GM<br><br>Chapter 7<br><br>**NOTICE OF MOTION AND MOTION OF CHAPTER 7 TRUSTEE FOR ORDER AUTHORIZING AND APPROVING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DAVID K. GOTTLIEB AND ADAM P. REICH**<br><br>Date:   March 3, 2010<br>Time:   10:00 a.m.<br>Place:  Courtroom 303<br>           21041 Burbank Blvd.<br>           Woodland Hills, CA |

**TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on March 3, 2010, at 10:00 a.m., or as soon thereafter as the

matter can be heard, before the Honorable Geraldine Mund, United States Bankruptcy Judge, in

Courtroom 303, located at 21041 Burbank Blvd., Woodland Hills, California, the Bankruptcy Court

will consider and act upon the Motion Of Chapter 7 Trustee For Order Authorizing And Approving

Sale Of Debtor's Assets Free And Clear Of All Liens, Claims, Encumbrances And Other Interests

Pursuant To Sections 363 And 365 Of The Bankruptcy Code (the "Motion"), filed by David K.

Gottlieb, the chapter 7 trustee (the "Trustee" or "Gottlieb") for the estate (the "Estate") of the above-

captioned debtor (the "Debtor").

**PLEASE TAKE FURTHER NOTICE** that the Motion is based upon this Notice of Motion

and Motion, the attached Memorandum of Points and Authorities and Declarations of David K.

Gottlieb and Adam P. Reich, the records and files in this chapter 7 case, and such additional evidence

and argument as may be presented at or before the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), a

formal response to the Motion must be filed with the Bankruptcy Court and served on the counsel for

the Trustee at least fourteen (14) days before the hearing.  Pursuant to Local Bankruptcy Rule 9013-

1(h), failure to file and serve timely a response in accordance with the Local Bankruptcy Rules may

be deemed by the Bankruptcy Court to be consent to the granting of the relief requested in the

Motion.

Dated: February 5, 2010                    PEITZMAN, WEG & KEMPINSKY LLP


By:____/s/ David B. Shemano_____
          David B. Shemano
Attorneys for the Trustee

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter relates to the administration of the Debtor's bankruptcy estate and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  Venue of this case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105, 363 and 365 of the United States Code (the "Bankruptcy Code"), and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure.

### II.

### GENERAL BACKGROUND

On May 21, 2008 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United State Code (the "Bankruptcy Code").

On August 24, 2009, the Bankruptcy Court issued an Order To Show Cause Why A Chapter 11 Trustee Should Not Be Appointed, Or In The Alternative Conversion To Chapter 7 Or Dismissal (the "OSC").

On September 9, 2009, after holding a hearing on September 8, 2009, the Bankruptcy Court entered its Order converting the case to chapter 7.  Gottlieb was appointed as the chapter 7 trustee.

### III.

### THE MARKETING OF THE DEBTOR'S ASSETS

Until the conversion of the case to chapter 7, the Debtor was a production company that created programming for home video/DVD distribution and licensing to television and cable networks.  The Debtor also maintained a film archive containing newsreels, vintage television programs, celebrity interviews and theatrical trailers.

Upon his appointment, the Trustee began the process of reviewing the Debtor's books and records to identify all of the Debtor's licensing agreement and other contracts in order to prepare the

assets for sale.  After conducting a preliminary analysis of the Estate's assets and liabilities, the Trustee concluded in his business judgment that, due to the nature of the Debtor's assets, the Trustee requires the assistance of a broker experienced with the sale of film libraries in order to maximize the value of the Debtor's assets.  Therefore, on November 17, 2009, the Trustee filed his application to employ Counsel RB Capital, LLC ("CRB") as the Trustee's sales and marketing agent.  On December 11, 2009, the Bankruptcy Court entered its Order authorizing the employment of CRB.

As set forth in the attached Declaration of Adam P. Reich, CRB began marketing the Debtor's assets in October 2009.  Representatives of CRB conducted physical inspections of the equipment and the library at the Hollywood location and provided the Trustee with a liquidation analysis of the assets.  Thereafter, CRB contacted numerous industry contacts to solicit bids for the Debtor's assets, including (i) Warner Bros., (ii) Sony; (iii) Summit; (iv) John Hyde; (iv) PowerSports; and (v) Timeless Media.  After several weeks of marketing, the highest offer received for the assets was the offer received from Calpartners, LLC ("Buyer" or "Calpartners"), which is described below.

## IV.

## THE PROPOSED SALE OF THE ASSETS

Subject to approval of the Bankruptcy Court and overbids, the Trustee has received an offer from Buyer to purchase substantially all of the Debtor's tangible and intangible assets (the "Assets") for $110,000 in cash (the "Purchase Price").  The Trustee and Buyer have negotiated an Asset Purchase Agreement (the "Agreement"), which sets forth the terms of the proposed sale to Buyer (the "Transaction"). Under the Agreement, the Buyer has delivered a cash deposit to the Trustee in the amount of $10,000 (the "Deposit").

A true and correct copy of the Agreement is attached as Exhibit A to the Gottlieb Declaration and is incorporated herein by this reference.  Capitalized terms in this Motion have the meanings ascribed to them in the Agreement, unless otherwise defined herein.  The material terms of the Agreement described below are subject to the terms of the Agreement, which control:

A.    Subject to overbids, Buyer shall pay $65,000 at the Closing and the remaining $35,000 no later than March 5, 2010.

B.      The Trustee shall transfer to Buyer all of the Debtors' right, title and interest in the following assets (the "Assets"):

1.      All rights of every kind and nature in the entirety of the Debtor's Film Library, including (i) all rights of distribution and exhibition in all media and territories throughout the universe by any means, method or device now known or hereinafter devised, and (ii) all intellectual property assets relating to the Film Library;

2.      All tangible personal property related to the Film Library, such as literary properties, videotapes, and promotional materials;

3.      All inventory;

4.      All equipment; and

5.      All accounts receivables, cash or cash equivalents received as a result of such accounts receivable, royalties, participations, fees, overages and other consideration from any source relating to the Film Library (collectively, "Payment Rights") that (i) are earned in accordance with generally accepted accounting principles after the Closing, and (ii) are received after the Closing (collectively, "Included Payment Rights").

C.      The Trustee shall assume and assign all executory contracts and license agreements related to the Film Library (the "Assigned Contracts").  If an executory contract that is part of the Film Library is not identified until after the Closing, the contract shall be deemed sold, assigned, transferred, and conveyed to Buyer as of the Closing, provided that Buyer acknowledges that it may not have the benefits of assumption and assignment under section 365 and its rights under the contract may be subject to all rights of the non-debtor party to the contract under all applicable law.

D.      The Assets shall not include the Debtor's (i) cash and cash equivalents, (ii) all Payment Rights that are not Included Payment Rights ("Excluded Payment Rights"), including with respect to Payments Rights arising from the Assigned Contracts, and (iii) all causes of action arising under chapter 5 of the Bankruptcy Code.

E.      In the event that Buyer collects a Payment Right and it is determined that some or all of the Payment Right is an Excluded Payment Right, Buyer shall promptly deliver the proceeds of the Excluded Payment Right to Seller minus a collection fee equal to 15% of the proceeds delivered to

the Seller; provided, however, Buyer shall not be entitled to any collection fee for any amounts

collected from KOCH Entertainment LP or any of its affiliates.

F.      The sale shall be "as is, where is" with no representations or warranties, including any

representations or warranties concerning the enforceability, validity, or accuracy of any of the Assets.

G.      The sale shall be free and clear of all liens, claims, encumbrances and other interests of

any and every kind whatsoever, except that Buyer shall take the Assets subject to all possessory liens.

H.      The Agreement contains no financing or due diligence contingencies.


**V.**

**THE PROPOSED SALE PROCEDURES AND BREAK-UP FEE**

The Trustee proposes that any parties interested in bidding (the "Potential Overbidders") on

the Assets must: (1) provide the Trustee with evidence no later than March 1, 2010, demonstrating

minimum financial qualifications, and (2) be present at the hearing on the Motion scheduled for March

3, 2010, at 10:00 a.m. (the "Sale Hearing").  Potential Overbidders should contact CRB as follows

with any questions concerning the Assets and/or to coordinate due diligence efforts:

> Adam P. Reich
> Counsel RB Capital, LLC
> 10618 Pico Blvd.
> Los Angeles, CA  90064
> Telephone: (310) 248-2979
> Email: areich@counselrb.com

At the Sale Hearing, the Potential Overbidders must be willing to bid not less than cash in the

amount of $120,000 upon substantially the same terms and conditions as set forth in the Agreement

(the "Overbid").  All Overbids must be accompanied by certified funds payable to the Trustee in the

amount of $10,000, which funds shall be treated as a good faith nonrefundable deposit.  The Trustee

reserves the right to increase or decrease the amount of the Overbid prior to the commencement of

the auction.

Furthermore, in the event that Calpartners is not the winning bidder, the Trustee requests

authority to pay Calpartners $5,000 from the proceeds of the sale to the winning bidders as

reimbursement of Calpartners' fees and expenses incurred negotiating the Agreement, performing due diligence and serving as the stalking horse bidder.  Under appropriate circumstances, courts have approved break-up fees in bankruptcy sales transactions.  *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2nd Cir. 1993).  "Breakup fees and other strategies may "be legitimately necessary to convince a 'white night' to enter the bidding by providing some form of compensation for the risks it is undertaking." *Id*. at 660 (*quoting Samjens Partners I v. Burlington Industries*, 663 F.Supp. 614, 624 (S.D.N.Y.)).

## VI.

### <u>THE SALE IS IN THE BEST INTERESTS OF THE ESTATE</u>

Section 363(b) of the Bankruptcy Code provides, in relevant part, that a trustee "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  The standard to be applied in determining whether a sale should be authorized under section 363(b) is whether such sale is in the best interests of the estate and the price is fair and reasonable. *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985).  The Trustee is given substantial discretion in this regard. *Id*.

The proposed sale of the Assets to the Buyer is in the best interests of the estate.  The Trustee has marketed the Assets and the offer from the Buyer is the highest and best offer received by the Trustee.  The public auction process satisfies the requirement that the price paid for the Assets be fair and reasonable. *See, e.g., In re Abbott Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986).

## VII.

## SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

The Trustee proposes to transfer the Assets free and clear of all liens, claims, encumbrances and other interests (collectively, the "Liens"), except that the sale shall be subject to all possessory liens. The Bankruptcy Court is authorized to approve the transfer of the Assets free and clear of all Liens pursuant to section 363(f) of the Bankruptcy Code, which provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if-
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The requirement of section 363(f) is met so long as any one or more of the conditions in subparagraphs (1) through (5) is satisfied. *See generally*, COLLIER ON BANKRUPTCY ¶ 363.06 ("It should be remembered that the language of section 363(f) is in the disjunctive, that is, that the sale free and of the interest concerned can occur if any one of the conditions of section 363(f) has been met."). As set forth below, section 363(f) is satisfied with respect to each of the known Liens asserted against the Assets.

All of the Liens will attach to the net proceeds of the sale with the same priority, validity and enforceability, if any, as they had had against the Assets, which proceeds shall be held by the Trustee in a segregated account pending further Order of the Bankruptcy Court. This provides adequate protection of the alleged Liens in the Receivables under section 363(e) of the Bankruptcy Code. Notice of the Motion has been served on all parties how have asserted Liens on the Assets.

The following is a list of the parties who have asserted Liens and been served with notice of the Motion, and the basis for the sale free and clear of such Liens pursuant to section 363(f) of the

Bankruptcy Code. Furthermore, failure to object to the sale free and clear of Liens should be deemed consent pursuant to section 363(f)(2) of the Bankruptcy Code. *See, e.g., Homeowners Services, Inc. v. Elliot (In re Elliott),* 94 B.R. 343 (E.D. Pa. 1988). If any other entity asserts any Liens against the Assets, the Debtors will demonstrate at or prior to the hearing on the Motion that the Assets may be sold free and clear of such Liens.

     A.    <u>Rainbo Records</u>. On December 13, 2007, Rainbo Records Mfg. Corp. ("Rainbo") filed a UCC-1 financing statement with the California Secretary of State disclosing an alleged security interest in certain identified recording masters. The Trustee is informed that Rainbo's secured claim was satisfied prepetition and Rainbo no longer asserts or has any secured claim against the Debtor's estate.

     B.    <u>Internal Revenue Service</u>. On or about December 14, 2009, the Internal Revenue Service ("IRS") filed a federal tax lien against the Debtor with the California Secretary State to secure an alleged claim of $202,955.92. Because the lien was filed postpetition without authority from the Bankruptcy Court, the lien is void pursuant to section 362(a) of the Bankruptcy Code. Therefore, the Trustee may sell free and clear of the lien because the lien is the subject of a bona fide dispute.

     C.    <u>Florence Pugliese</u>. On October 26, 2009, Florence Pugliese ("Pugliese") commenced an adversary proceeding by filing a "Complaint By Florence Pugliese To Determine The Validity, Priority Or Extent Of Her Lien Against The Assets Of The Debtor And The Claims Of Unsecured Creditors" (the "Complaint"). In the Complaint, Pugliese alleged that she was the owner of or held a security interest in the Debtors' assets. On November 25, 2009, the Trustee filed a motion to dismiss the Complaint for failure to state a claim. On December 22, 2009, Pugliese and the Trustee entered into a stipulation dismissing the Complaint against the Trustee with prejudice, which stipulation was filed with the Court on December 23, 2009. Therefore, to the extent Pugliese continues to assert an ownership or security interest in the Assets, the Trustee may sell free and clear of the ownership or security interest because ownership or security interest is the subject of a bona fide dispute.

# VIII.

## ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

As set forth in the Agreement, the Trustee is required to assume and assign various licensing and other agreements to the Buyer (collectively, the "Assigned Contracts").[1]  The list of the Assigned Contracts and respective cure amounts is attached hereto as Exhibit B.[2]

A.  The Assumption And Assignment Of The Contracts Is In The Best Interests Of The Debtor's Estate.

Section 365(a) of the Bankruptcy Code provides, in relevant part, that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the Debtor." The United States Supreme Court has held that the debtor's decision to assume or reject an agreement as an executory contract should be judged by the "business judgment" test.  *See, National Labor Relations Board v. Bildisco and Bildisco*, 465 U.S. 513, 523, 104 S.Ct. 1188, 1194-95 (1984).

As the owner, producer and distributor of motion pictures, the Debtor is a licensee and licensor of intellectual property rights.  If the Trustee cannot assign the Debtor's licensing agreements, some or all of the Assets will have little if any realizable value.  Therefore, the Trustee believes that the assumption and assignment of the Assigned Contracts to the Buyer is in the best interests of the Debtor's estate.

B.  Objections To Cure Amounts And Requests For Adequate Assurance.

The Trustee requests that unless a written objection to the specified cure amount set forth on Exhibit B and/or the proposed adequate assurance of performance, together with evidence that supports the objection, is filed with the Bankruptcy Court and served on counsel for the Trustee no later than the objection deadline of February 17, 2010, the non-Debtor party shall be forever barred

---

[1] The Debtors reserve all rights to assert that any specific Assigned Contract is not an executory contract.

[2] The Trustee is unaware of any defaults or unpaid amounts under the Assigned Contracts. Therefore, as set forth on Exhibit B, the Trustee has not scheduled any cure claims to be paid in connection with the assumption and assignment of the Assigned Contracts

from asserting against the Debtors or the Buyer any default allegedly arising or incurred prior to the Closing, any actual pecuniary loss resulting from such default, or any other unpaid obligation under the assumed and assigned Assigned Contract arising or incurred prior to the Closing, other than the cure amount set forth on Exhibit B, which shall only be asserted against the Debtors.

Pursuant to the Agreement, if a written objection to the specified cure amount set forth on Exhibit B and/or the proposed adequate assurance of performance, together with evidence that supports the objection, is timely filed and served, Buyer can elect to remove the contract from the list of Assigned Contracts to be assumed and assigned.

The Trustee requests that the following apply with respect to all Assigned Contracts:

1.      Upon the Closing or promptly after the Closing, the Trustee shall pay or provide for the payment of the specified cure amount to the non-Debtor party to the Assigned Contract;

2.      The Trustee will be authorized to assume and assign the Assigned Contract to the Buyer;

3.      The Trustee, the Debtor and its estate shall have no liability under the Assigned Contract after the Closing;

4.      The only adequate assurance required of the Buyer shall be its promise to perform in accordance with the applicable Assigned Contract with respect to obligations first arising or incurred following the Closing; and

5.      If a non-Debtor party to an Assigned Contract timely files a written objection to the proposed cure amount that is supported by evidence, the Trustee shall escrow the cure amount in controversy at the Closing (or a lower amount if authorized by the Bankruptcy Court) until the dispute is resolved by the Bankruptcy Court after hearing or stipulation by the parties, and such dispute shall not in any manner whatsoever affect the Closing of the sale of the Assets to the Buyer or consummation of the assumption and assignment of the Assigned Contract by the Trustee to the Buyer.

6.      If a non-Debtor party to an Assigned Contract timely files a written objection to the proposed adequate assurance of future performance, and the objection cannot be resolved

before or at the Sale Hearing, the Debtor will request that the Bankruptcy Court schedule an expedited hearing to resolve the objection.

       C.     <u>Assignment of Unidentified Executory Contracts</u>.

While the Trustee and Buyer expended significant effort to review the Debtor's books and records to identify all executory contracts that are integral to the Film Library, the Trustee and Buyer are concerned that it is possible that there are one or more contracts were not identified as part of the due diligence and, therefore, the contract(s) is not included on Exhibit B and the non-Debtor party will not receive notice of this Motion. Therefore, Article 1.02 of the Agreement provides that if an executory contract that is part of the Film Library is not identified until after the Closing, the contract shall be deemed sold, assigned, transferred, and conveyed to Buyer as of the Closing (and shall be deemed an Assigned Contract), provided that Buyer acknowledges that it may not have the benefits of assumption and assignment under section 365 and its rights under the contract may be subject to all rights of the non-debtor party to the contract under all applicable law.

## IX.

## <u>SALE SUBJECT TO DISPUTED RIGHTS</u>

Schedule 3.02 of the Agreement identifies certain motion picture titles in which the Debtor may have an interest and in which the Trustee is aware that a third party (a "Claimant") has commenced or threatened litigation alleging that the Debtor has no right to distribute or otherwise exploit the motion picture title (the "Disputed Titles"). The following are the Disputed Titles:

|  | TITLE | CLAIMANT |
|---|---|---|
| 1. | Abbott and Costello Show (and related movies, photographs and memorabilia) | TCA Television Corp. |
| 2. | Dean Martin, Encore | Dean Martin Family Trust |
| 3. | Dean Martin, Everybody Loves Somebody Sometime | Dean Martin Family Trust |

| | TITLE | CLAIMANT |
|---|---|---|
| 4. | Dean Martin, Memories Are Made Of This | Dean Martin Family Trust |

Pursuant to the Agreement, the Disputed Titles will be transferred to the Buyer subject to all rights and claims of the Claimants and Buyer will have no recourse against the Trustee or the Debtor's estate if it is later determined that the estate had no interest in the Disputed Titles and/or Buyer incurs any liability as a result of its exploitation of the Disputed Titles.

At any time before the Closing, Buyer has the right to exclude a Disputed Title from the Assets to be transferred.  In the event that Buyer elects to exclude a Disputed Title from the Assets to be transferred, the Trustee requests that the Bankruptcy Court authorize the Trustee to file a notice pursuant to section 554 of the Bankruptcy Code abandoning the estate's interest in the Disputed Title without further notice, hearing or Order of the Court.

## X.

## THE  PROPOSED COMMISSION TO THE TRUSTEE'S BROKER

On November 17, 2009, the Bankruptcy Court entered its Order authorizing the Trustee to retain CRB as his sales and marketing agent for the Assets.  A true and correct copy of the Order and the approved engagement agreement is attached as Exhibit C to the Gottlieb Declaration.  Pursuant to the approved engagement agreement that was approved by the Bankruptcy Court, CRB is entitled to receive a commission of six percent (6%) of the gross proceeds of any sale of the Assets.  Therefore, pursuant to sections 327 and 330 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, the Trustee requests authorization to pay CRB a commission of 6% of the gross sales price upon the closing of the sale of the Assets.

## XI.

## CONCLUSION

**WHEREFORE**, the Trustee requests that the Bankruptcy Court enter an Order, substantially in the form attached as Exhibit D to the Gottlieb Declaration:

A.      Authorizing the Trustee to sell, assign and transfer the Assets to Buyer pursuant to the Agreement, and determining that, when the sale, assignment and transfer is effective, the Trustee shall be deemed to have sold, assigned and transferred all of the Debtor's rights, title and interest in and to the Assets to Buyer free and clear of all Liens of any and every kind whatsoever, except that the sale shall be subject to possessory liens;

B.      Directing that all Liens shall attach to the proceeds of the sale with the same priority, validity and enforceability, if any, as they had against the Assets, which proceeds shall be held by the Trustee in a segregated account pending further Order of the Bankruptcy Court;

C.      Authorizing the Trustee to assume and assign the Assigned Contracts to the Buyer;

D.      Determining that Buyer acted in good faith in purchasing the Assets within the meaning of section 363(m) of the Bankruptcy Code;

E.      Authorizing the Trustee to pay from the proceeds of the sale the commission due and owing to CRB;

F.      Authorizing the Trustee to execute all documents and instruments and to take all actions necessary to effectuate the Agreement; and

G.      Granting such other and further relief as may be appropriate under the circumstances.


Dated: February 5, 2010            PEITZMAN, WEG & KEMPINSKY LLP


                                   By:____/s/ David B. Shemano_____
                                          David B. Shemano
                                   Attorneys for the Trustee

## DECLARATION OF DAVID K. GOTTLIEB

I, David K. Gottlieb, declare as follows:

1.      I am a certified public accountant and the chapter 7 trustee for the estate of the above-captioned debtor (the "Debtor").  Except as otherwise stated, I have personal and first-hand knowledge of the matters set forth herein and, if called as a witness, would competently testify thereto.

2.      On May 21, 2008 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United State Code (the "Bankruptcy Code").

3.      On August 24, 2009, the Bankruptcy Court issued an Order To Show Cause Why A Chapter 11 Trustee Should Not Be Appointed, Or In The Alternative Conversion To Chapter 7 Or Dismissal (the "OSC").

4.      On September 9, 2009, after holding a hearing on September 8, 2009, the Bankruptcy Court entered its Order converting the case to chapter 7.  I was appointed as the chapter 7 trustee.

5.      Until the conversion of the case to chapter 7, the Debtor was a production company that created programming for home video/DVD distribution and licensing to television and cable networks.  The Debtor also maintained a film archive containing newsreels, vintage television programs, celebrity interviews and theatrical trailers.

6.      Subject to approval of the Bankruptcy Court and overbids, I have received an offer from Calpartners, LLC ("Buyer"), to purchase substantially all of the Debtor's assets for $110,000 (the "Purchase Price").  The Buyer and I have negotiated an Asset Purchase Agreement (the "Agreement"), which sets forth the terms of the proposed sale to Buyer (the "Transaction").  In accordance with the APA, Buyer has delivered a deposit to the Trustee in the amount of $10,000 (the "Deposit").  A true and correct copy of the Agreement is attached as Exhibit A.

7.      Pursuant to the Agreement, the Debtor's estate will be paid consideration of $110,000.  After substantial marketing, this is the best offer for the purchase of the Debtor's Assets negotiated to date and I  believe that the terms of the Agreement negotiated with Buyer offer the best source of recovery for creditors unless there is an overbid.

8.      With the assistance of my sales and marketing agent, Counsel RB Capital, LLC ("CRB"), I actively marketed the Assets.  After several weeks of marketing, I determined that the highest offer received for the assets was the offer received from Calpartners, LLC ("Buyer") and that Buyer's offer contained few contingencies or other obstacles to a consummation of the sale.

9.      The Motion discloses all material terms of the Agreement.  Furthermore, the Agreement was negotiated by the Buyer and me at arms'-length, and the sale will be consummated on an arm's-length basis after the Assets were marketed for sale by me and after overbids were solicited. Buyer is neither an insider nor an affiliate of the Debtor or me.  Thus, Buyer should be deemed a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code.

10.     Buyer expended considerable time performing due diligence, including identifying the Debtor's licensing agreements.  Buyer also expended considerable time negotiating the Agreement. Buyer also agreed, at its own expense, to move and store the Assets pending the Closing.  Under the circumstances, I believe it would be appropriate to provide Buyer a break-up fee in the event Buyer is not the wining bidder for the Assets.  I believe the negotiated break-up fee of $5,000 is fair and reasonable under the circumstances.

11.     Pursuant to the APA, the Assets are to be transferred free and clear of all liens, claims, encumbrances and other interests (collectively, "Liens" as defined in the APA), except that the sale shall be subject to possessory liens.  All Liens will attach to the net proceeds of the sale with the same priority, validity and enforceability, if any, as they had had against the Assets, which proceeds shall be held by the Trustee in a segregated account pending further Order of the Bankruptcy Court.  Notice of the Motion has been served on all parties who have asserted Liens on the Assets.

12.     Pursuant to the Agreement, I am required to assume and assign various licensing and other agreements to the Buyer (collectively, the "Assigned Contracts").  The list of the Assigned Contracts and respective cure amounts is attached hereto as Exhibit B.  I am unaware of any defaults or unpaid amounts under the Assigned Contracts.

13.     On November 17, 2009, the Bankruptcy Court entered its Order authorizing me to retain CRB as my sales and marketing agent.  A true and correct copy of the Order and the approved

engagement letter is attached as Exhibit C. Pursuant to the approved engagement agreement, CRB is entitled to receive a commission of six percent (6%) from the sale of the Assets. Pursuant to sections 327 and 330 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure, I request authorization to pay CRB a commission of 6% of the gross sales price upon the closing of the sale.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 28, 2010, at Sherman Oaks, California.

David K. Gottlieb

## **DECLARATION OF ADAM M. REICH**

I, Adam M. Reich, declare as follows:

1.      I am the Co-CEO of Counsel RB Capital, LLC ("CRB") with offices located at 3435 Wilshire Blvd., Suite 1870, Los Angeles, CA  90010.  Each of the facts contained in this declaration is based upon my personal knowledge and, if called as a witness to do so, I could competently testify thereto.

2.      The principals of CRB, including myself and Jonathan Reich, are the former principals of Go Industry, the largest industrial auctioneer in the world today.  After selling my interest in Go Industry in 2006, I formed Greystone Private Equity which specializes in the identical liquidation business. In February 2009, the principals of Greystone Private Equity also formed the Firm to take advantage of distressed asset disposition opportunities.  The principals of the firm have participated in the sale of over 20 television and film libraries, including Carolco, Gladden and MCEG.

3.      In the beginning of October 2009, I was contacted by David K. Gottlieb, the chapter 7 trustee (the "Trustee") of the estate (the "Estate") of Passport International Entertainment, LLC (the "Debtor").  The Trustee requested that CRB act as a sales agent and auctioneer for certain assets of the Estate.  The assets include, among other things, a film documentary library and post production equipment.

4.      Representatives of CRB conducted physical inspections of the equipment and the library at the Debtor's Hollywood location and provided the Trustee with a liquidation analysis of the assets.

5.      Thereafter, because of mounting occupancy and other administrative expenses, the Trustee requested that CRB market these assets for sale. Thereafter, CRB contacted numerous industry contacts to solicit bids for the Debtor's assets, including (i) Warner Bros., (ii) Sony; (iii) Summit; (iv) John Hyde; (iv) PowerSports; and (v) Timeless Media.  After several weeks of marketing, the highest offer received for the assets was the offer received from Calpartners, LLC for $110,000.

1    I declare under penalty of perjury that the foregoing is true and correct.

2    Executed this 2nd day of January 2009, at Los Angeles, California.

_____
Adam P. Reich

# EXHIBIT A

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT  (the "Agreement") is made and dated this 30th day of December, 2009, by and between David K. Gottlieb, chapter 7 trustee (the "Trustee") for the estate of Passport International Entertainment LLC (the "Debtor"), and Calpartners, LLC.  For purposes of this Agreement, the Trustee is referred to as the "Seller" and Calpartners, LLC is referred to as the "Buyer."

## RECITALS

A.      On May 21, 2008 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United State Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") commencing case no. 08-13319-GM (the "Bankruptcy Case").

B.      On August 24, 2009, the Bankruptcy Court issued an Order To Show Cause Why A Chapter 11 Trustee Should Not Be Appointed, Or In The Alternative Conversion To Chapter 7 Or Dismissal (the "OSC") in the Bankruptcy Case.

C.      On September 9, 2009, after holding a hearing on September 8, 2009, the Bankruptcy Court entered its Order converting the Bankruptcy Case  to chapter 7.  David K. Gottlieb was appointed as the chapter 7 trustee of the Debtor's estate.

D.      Until the conversion of the Bankruptcy Case to chapter 7, the Debtor was a production company that created programming for home video/DVD distribution and licensing to television and cable networks.  The Debtor also maintained a film archive containing newsreels, vintage television programs, celebrity interviews and theatrical trailers.  The Debtor's rights that comprise the tangible and intangible rights and assets that are associated with the copyright and other elements that are included with the conception, writing, acquisition, production, financing and distribution of the programming and archive are collectively referred to as the "Film Library."

E.      Seller and Buyer have agreed on the terms of a proposed acquisition by Buyer of the Assets, as defined below (the "Transaction").

F.      Seller and Buyer are entering into this Agreement to implement the Transaction, subject to, among other things, approval of this Agreement by the Bankruptcy Court.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows.

# Article I.

## ASSET DESCRIPTION

1.01    **Assets**.  Seller agrees that at the Closing he shall sell, assign, transfer and convey to Buyer, AS IS, WHERE IS, WITH NO REPRESENTATIONS OR WARRANTIES OR RECOURSE OF ANY KIND (except as set forth below in Article 3.01), free and clear of all liens, claims, encumbrances and other interests ("Free and Clear") (except as set forth in Article 2.02), and Buyer agrees that it shall purchase and acquire from Seller, all right, title and interest held by the Debtor's estate, if any, in all of the Debtor's assets, wherever located and by whomever held (the "Assets") (except as set forth in Article 1.03), including:

(a) All rights of every kind and nature in the entirety of the Debtor's Film Library, including the motion pictures identified in Schedule 1.01, including (i) subject to existing distribution agreements identified in Schedule 1.01(i), all rights of distribution and exhibition in all media and territories throughout the universe by any means, method or device now known or hereinafter devised, and (ii) all intellectual property assets relating to the Film Library;

(b) All tangible personal property in the Seller's possession or under his control relating to the Film Library, including all material property relating to the development, production, completion, delivery, exhibition, distribution or other exploitation, including literary property, exposed film, videotapes, developed film, positives, negatives, prints, answer prints, television spots, radio spots, dialogue continuities, press clippings, all versions including television, airlines and foreign language, special effect, preprint materials, soundtracks, recordings, audio and video tapes and discs of all types and gauges, advertising and promotional materials relating to the Film Library, transparencies, posters, pressbooks, publicity kits, correspondence, contracts, agreements, licenses, and related documents, books, records and instruments, and all duplicates, drafts, versions, variations and copies of each, and all pledgeholder, laboratory, access or film warehousing agreements related thereto and any and all documents issued by any pledgeholder, warehouseman or bailee with respect thereto (collectively, the "Physical Properties");

(c) All accounts receivables, cash or cash equivalents received as a result of such accounts receivable, royalties, participations, fees, overages and other consideration from any source relating to the Film Library (collectively, "Payment Rights") that (i) are earned in accordance with generally accepted accounting principles after the Closing, and (ii) are received after the Closing (collectively, "Included Payment Rights");

(d) All equipment, including all audio and video recording, editing and playback equipment;

(e) All inventory, proprietary artwork, works-in-progress and raw materials;

2

(f)  All patents and patent applications, invention disclosures, inventor's certificates, reexaminations, and reissues;

(g) All trademarks applications, trademark registrations, trade names, brand names, trade secrets, and domain names;

(h) All copyrights, copyright registrations, and licenses, URL's, websites and web addresses;

(i)  All goodwill and know how;

(j)  All books, records, logs, papers, files, location files, correspondence, reports, account information, records and other business files and records; and

(k) All other intangibles and intellectual property of any kind used or useful in the operation of Debtor's business.

1.02    **Assumption and Assignment of Executory Contracts**.   Seller shall assume and assign to Buyer pursuant to section 365 of the Bankruptcy Code all of the prepetition executory contracts, and assign all the postpetition executory contracts, which are listed on Schedule 1.02 (collectively, the "Assigned Contracts").  Schedule 1.02 includes all known cure amounts required to be paid pursuant to section 365 of the Bankruptcy Code as a condition to assumption and assignment and Buyer agrees to pay the cure amounts specifically listed on Schedule 1.02.  Under no circumstances shall Seller have any duty to pay any cure amount to assume and assign any Assigned Contract.  If the actual cure amount for an Assigned Contract is more than the amount identified on Schedule 1.02, prior to the Closing Buyer shall either (a) notify Seller in writing that it will pay the actual cure amount at the Closing, or (b) notify Seller in writing of its determination not to assume the Assigned Contract.  Schedule 1.02 represents the efforts of the parties to identify all executory contracts that are part of the Film Library.  If an executory contract that is part of the Film Library is not identified until after the Closing, the contract shall be deemed sold, assigned, transferred, and conveyed to Buyer as of the Closing (and shall be deemed an Assigned Contract), provided that Buyer acknowledges that it may not have the benefits of assumption and assignment under section 365 and its rights under the contract may be subject to all rights of the non-debtor party to the contract under all applicable law.

1.03    **Excluded Assets**.  Notwithstanding anything to the contrary in this Agreement, the Assets shall not include Seller's (i) cash and cash equivalents, (ii) all Payment Rights that are not Included Payment Rights ("Excluded Payment Rights"), including with respect to Payments Rights arising from the Assigned Contracts, and (iii) all causes of action arising under chapter 5 of the Bankruptcy Code.

1.04    **Buyer Fee For Collection Of Excluded Payment Rights**.  In the event that Buyer collects a Payment Right and it is determined that some or all of the Payment Right is an Excluded Payment Right, Buyer shall promptly deliver the proceeds of the Excluded Payment Right to Seller minus a collection fee equal to 15% of the proceeds delivered to the Seller; *provided, however,* Buyer shall not be entitled to any collection fee for any amounts collected from KOCH Entertainment LP or any of its affiliates.

3

# Article II.

## **PURCHASE PRICE**

2.01    **Amount of Purchase Price**.  In consideration for the transfer of the Assets, Buyer hereby agrees to pay to Seller a purchase price of $110,000 (the "Purchase Price") as follows:

(a) $10,000, upon execution of this Agreement (the "Deposit"), which amount shall be segregated by Seller for the exclusive benefit of Buyer until the Closing;

(b) $65,000, at the Closing; and

(c) $35,000, on or before March 5, 2010.

2.02    **Possessory Liens**.  Possessory liens asserted by laboratories and other third parties that are in possession of certain of the Physical Properties (the "Possessory Liens") shall be an exception to the obligation of Seller to deliver the Assets to Buyer Free and Clear and Seller shall have no obligation to obtain the release of the Possessory Liens and/or deliver possession of the Physical Properties subject to the Possessory Liens to Buyer.

2.03    **Assumption of Liabilities**.

(a)    Obligations Not Assumed.  Buyer shall not assume and shall not be liable for any obligations or liabilities of the Seller or the Debtor not expressly assumed herein. Without affecting the generality of the foregoing, Buyer shall not be liable for:

(i)    Costs, expenses, obligations or liabilities which first arose prior to the Closing Date, except as specifically provided herein;

(ii)    Costs, expenses, obligations or liabilities related to or arising out of any employment relationships of Seller or Debtor;

(iii)    Residual payments pursuant to collective bargaining agreements (collectively, "Residuals") resulting from Excluded Payment Rights;

(iv)    Talent participations or producer royalties, including any fees payable for merchandising and music rights (collectively, "Participations") arising before the Closing;

(v)    Obligations in respect of any litigation, claims, demands or proceedings primarily related to any of the activities of Seller or Debtor;

4

(vi)     Obligations under output or distribution agreements unless such obligations are contained in the Assigned Contracts, and then only with respect to obligations which primarily relate to Included Payment Rights;

(vii)    Obligations arising out of audits, arbitrations, settlements, or judgments with respect to Participation or Residual obligations that are not assumed, even if the audit, arbitration, settlement or judgment requires a payment after the Closing.

(b)      <u>Obligations Assumed</u>.  From and after the date of the Closing, Buyer agrees to assume and be liable only for the following specifically identified obligations (collectively, the "Assumed Obligations").

(i)      Residuals primarily relating to Included Payment Rights;

(ii)     Participations arising after the Closing;

(iii)    Rights to negotiate to work on or to work on or to be paid Participations in connection with sequels, prequels or remakes or other works that are derivative of the Film Library ("Attachments");

(iv)     Obligations under the Assigned Contracts which primarily relate to benefits under such Assigned Contracts to which Buyer is entitled under this Agreement;

(v)      Obligations under output or distribution agreements that are Assigned Contracts that primarily relate to Included Payment Rights.

(vi)     Obligations arising out of audits, arbitrations, settlements, or judgments with respect to Participations or Residual obligations that are assumed.

2.04    **Allocation**.  The purchase price shall be allocated among the Assets as the parties shall, in good faith, mutually agree, based upon fair market values.

2.05    **Taxes**.  Buyer shall pay all sales and use taxes, if any, that arise from the Transaction.

2.06    **Possible Higher or Better Offers**.  Buyer acknowledges and is aware that (i) the Transaction and Agreement are subject to hearing and approval by the Bankruptcy Court and shall be noticed to creditors and parties in interest in the bankruptcy case, and (ii) the sale contemplated by the Transaction and Agreement is subject to any higher or better offers at the hearing held to approve the Transaction (the "Sale Hearing"), as well as any objections by creditors and parties in interest.  Accordingly, Buyer acknowledges that Seller and its agents and representatives are obligated to continue to market the Assets for sale and to solicit higher or better offers until the Assets are sold.  In the event a higher or better offer is accepted and approved by the Bankruptcy Court or the Bankruptcy Court refuses to approve the Agreement, Seller shall return the Deposit to Buyer within five (5) business days thereafter.

2.07    **Bidding Procedures and Break-Up Fee**.  At the Sale Hearing, Seller shall request that the Bankruptcy Court authorize the following bidding procedures:

(a)    Only bidders who demonstrate minimum financial qualifications shall be permitted to bid;

(b)    The minimum initial overbid shall be at least $10,000 cash with $5,000 cash overbid increments thereafter;

(c)    Buyer shall receive $5,000 (the "Break-Up Fee") from the sale proceeds in the event that (i) the Court authorizes a sale of the Assets, and (ii) Buyer is not the successful bidder at the Sale Hearing.  In the event that the successful bidder does not successfully close the Transaction, and in lieu of paying the Break-Up Fee, Seller shall have the right in its discretion to obligate Buyer to purchase the Assets in accordance with the terms of this Agreement (or such higher bid made by Buyer at the Sale Hearing).  Seller does not guaranty that the Bankruptcy Court will approve the Break-Up Fee and approval of the Break-Up Fee in whole or in part is a not a condition to the consummation of the Transaction by any party hereto.

# Article III.

## REPRESENTATIONS AND WARRANTIES

3.01    **Seller's Representations and Warranties**.  Seller represents, warrants and covenants to Buyer that:

(a) Power and Authority.  Seller has all requisite power and authority to enter into this Agreement and carry out all of his obligations under this Agreement.

(b) No Transfer of Assets.  Seller has not disposed of, transferred or agreed to transfer any of the Assets since the Petition Date.

(c) No Litigation Prohibiting the Transaction.  To the best of Seller's knowledge, there are no actions, suits or proceedings pending or threatened in any court or before any administrative agency which would prevent Seller from completing the Transaction.

(d) No Other Warranties by Seller.  Seller shall be selling the Assets on an "as is, where is" basis, with no representations or warranties of any kind, express or implied, either oral or written, with respect to the physical condition or value of the Assets.  Upon the Closing, Buyer shall assume all responsibility, liability and obligation for the physical condition and status of the Assets.  Seller has made and hereby makes no warranty or representation whatsoever regarding the fitness for a particular purpose, quality or merchantability of the Assets, including any warranty or representation that the Debtor's ownership, possession, distribution or other

6

exploitation of the Assets does not violate or infringe the right of any other person or entity in any respect.

3.02    **Buyer's Representations and Warranties**. Buyer represents, warrants and covenants to Seller that:

(a) Corporate Organization.  Buyer is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its incorporation.

(b) Power and Authority.  Buyer has all requisite power and authority to enter into this Agreement and carry out all of its obligations under this Agreement.  The officer or officers of Buyer who shall execute and deliver this Agreement have been duly authorized to do so by all requisite action on the part of Buyer.

(c) No Litigation Prohibiting the Transaction.  To the best of Buyer's knowledge, there are no actions, suits or proceedings pending or threatened in any court or before any administrative agency which would prevent Buyer from completing the Transaction.

(d) Buyer's Inspection.  Buyer has inspected the Assets, acknowledges the quantity and condition of the Assets, and acknowledges that no further inspection or due diligence is a condition to complete the Transaction.  Buyer acknowledges that it is purchasing the Assets on an "as is, where is" basis, with no representations or warranties of any kind except as specifically set forth in Article 3.01(a)–(d) above. Without limitation, Buyer acknowledges that (i) various parties have commenced or threatened litigation alleging that the Debtor has no right to distribute or otherwise exploit certain of the Assets, including the parties identified on Schedule 3.02, and (ii) Buyer assumes all risk with respect to the ownership, possession, distribution or other exploitation of the entirety of the Assets after the Closing without any recourse to Seller under any circumstances.

# Article IV.

## CONDITIONS PRECEDENT TO CLOSING

4.01    **Buyer's Conditions**. Buyer's obligation to complete the Transaction is subject to the satisfaction at or prior to the Closing of each of the following conditions (any one or more of which may be waived in writing by Buyer):

(a)    Court Approval.  The Court shall have entered a non-appealable final order approving Seller's motion for approval of the Transaction and the Agreement, and authorizing Seller to (i) transfer the Assets to Buyer Free and Clear, except as set forth in Article 2.02, and (ii) assume and assign the Assigned Contracts.

(b)    Performance of Obligations.  All terms, covenants, agreements and conditions set forth in this Agreement to be complied with and performed by Seller on or prior to the Closing shall have been fully complied with and performed in all

material respects, and all representations and warranties of Seller shall be true on the Closing in all material respects as if made on and as of such date.

(c)      Delivery of Documents.  Seller shall have executed and delivered to Buyer all documents requested by Buyer in its reasonable discretion to effectuate the Transaction.

4.02    **Seller's Conditions**.  Seller's obligation to complete the Transaction is subject to the satisfaction at or prior to the Closing of each of the following conditions (any one or more of which may be waived in writing by Seller):

(a)      Court Approval.  The Court shall have entered a non-appealable final order approving Seller's motion for approval of the Transaction and the Agreement, and authorizing Seller to (i) transfer the Assets to Buyer Free and Clear, except as set forth in Article 2.02, and (ii) assume and assign the Assigned Contracts.

(b)  Performance of Obligations.  All terms, covenants, agreements and conditions set forth in this Agreement to be complied with and performed by Buyer on or prior to the Closing shall have been fully complied with and performed in all material respects, and all representations and warranties of Buyer shall be true on the Closing in all material respects as if made on and as of such date.

(c) Delivery of Documents.  Buyer shall have executed and delivered to Seller all documents requested by Seller in its reasonable discretion to effectuate the Transaction.

## Article V.

## CLOSING

5.01    **Closing**.  The closing of the Transaction (the "Closing") shall occur at the offices of Peitzman, Weg & Kempinsky LLP, 10100 Santa Monica Blvd, Suite 1450, Los Angeles, California  90067, within three (3) business days after all conditions to Closing shall be satisfied.   At or before the Closing, (i) Buyer shall deliver $65,000 to Seller, a promissory note in the amount of $35,000, and all other documents reasonably requested by Seller, (ii) Seller shall deliver to Buyer possession of the Assets, and all documents reasonably requested by Buyer. Any party hereto may terminate the Agreement if the Closing does not occur by March 31, 2010.

## Article VI.

## COVENANTS PENDING CLOSING

6.01    **Conduct of Business**. Seller covenants that, pending the Closing, without Buyer's prior written consent:

8

(a) <u>Contracts</u>. Seller shall not modify any Assigned Contract or enter into any contract relating to the Assets;

(b) <u>Preserving Assets</u>. Seller shall preserve the Assets and maintain them in the same condition as of the date of this Agreement, reasonable wear and tear excepted;

(c) <u>Sale of Assets</u>. Seller shall not sell or otherwise dispose of any material asset which constitutes a portion of the Assets;

(d) <u>Insurance</u>. Seller shall continue to carry the existing insurance of the Assets; and

(e) <u>Representations True</u>. The representations and warranties contained herein shall continue to be true and correct on and as of the Closing as if made on and as of the Closing; and Seller shall advise Buyer promptly in writing of any condition or circumstance occurring from the date hereof up to and including the Closing which would cause the representations and warranties of Seller to become untrue in any material respect.

6.02   **Possession of Assets**.  At any time prior to the Closing, Seller shall have the right to request that Buyer take possession of the tangible Assets presently located at 10520 Magnolia Boulevard, North Hollywood, CA (the "Magnolia Building").  Upon receipt of such request, Buyer shall promptly arrange for all such Assets to be removed from the Magnolia Building and stored and preserved by Buyer at the sole expense of Buyer.  Pending the Closing, Buyer at its sole expense shall maintain insurance for the Assets.  Pending the Closing, Buyer shall give Seller (and any potential bidders identified by Seller) access to the Assets during normal business hours throughout the period prior to the Closing.   If Buyer is not the successful bidder, Buyer shall provide reasonable cooperation to the successful bidder with respect to the transfer of possession of the Assets, which transfer shall be at the expense of such successful bidder.

# Article VII.

## COVENANTS OF ACCESS AND INFORMATION

7.01   **Access**.  Seller shall give Buyer access during normal business hours throughout the period prior to the Closing to the Assets and to its books, contracts, commitments and other records with respect thereto, and shall furnish Buyer during such period with such information in Seller's possession concerning the Assets as Buyer may reasonably request.

7.02   **Permits and Approvals**. Each party covenants and agrees to promptly furnish the other with all information and data in the furnishing party's possession requested in writing by the requesting party which is reasonable and necessary in order to assist the requesting party to secure the permits, licenses, approvals, financing and/or consents required to complete the Transaction, if any.

7.03    **Litigation: Claims**. Each party covenants and agrees to promptly notify the other of any claim, action, suit, proceeding or investigation which is commenced or threatened and becomes known to any of them between the date of this Agreement and the Closing and relating to or affecting the Assets.

# Article VIII.

## RISK OF LOSS

8.01    Risk of loss to the Assets shall not pass to Buyer until the Closing. In the event of the material destruction or damage of any Assets prior to Closing, Seller shall promptly notify Buyer in writing.  Buyer shall have ten (10) days from receipt of such notice to notify Seller of its election to terminate this Agreement.  Upon Buyer providing such notice to Seller, this Agreement shall cease and terminate and be of no further force or effect, and neither party shall have any rights against the other by reason of this Agreement and/or such termination. In the alternative, Buyer may elect to accept insurance proceeds payable to Seller to cover the loss, may propose a reduction in the Purchase Price to reflect the loss or may propose other modified terms and, in such event, Seller and Buyer shall negotiate in good faith to reach an agreement to a revised Transaction. Seller agrees to support a modification that has been bargained and agreed to in writing and signed on behalf of both Seller and Buyer and, as needed, to immediately seek Bankruptcy Court approval of the modifications on shortened notice, if so requested by Buyer.

# Article IX.

## NOTICES

9.01    **Notices**.  All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of delivery, if delivered personally or by telecopy or similar transmittal (with receipt acknowledged), to the party to whom notice is to be given, or on the fifth business day after mailing if mailed by first class mail, registered or certified, postage prepaid and properly addressed as follows:

If to Buyer:

>   CalPartners, LLC
>   c/o Darrin Holender, Esq.
>   449 S. Beverly Drive, Suite 214
>   Beverly Hills, CA 90210
>   Telephone:  (310) 553-5866
>   Telecopier:  (866) 308-2492
>   Email: darrin@holenderlaw.com

10

If to Seller:

> David K. Gottlieb
> Crowe Horwath LLP
> 15233 Ventura Blvd.
> Sherman Oaks, CA  91403-2201
> Telephone: (818) 325-8415
> Telecopier: (818) 501-7040
> Email:  david.gottlieb@crowehorwath.com

with a copy to:

> Peitzman, Weg & Kempinsky LLP
> Attn: David B. Shemano
> 11000 Santa Monica Blvd, Suite 1450
> Los Angeles, CA  90064
> Telephone: (310) 552-3100
> Telecopier: (310) 552-3101
> Email: dshemano@pwkllp.com

9.02     **Changes**. Any party hereto may change its address or fax number for the purpose of receiving notices or demands as herein provided by a written or faxed notice given in the manner provided above to the other parties hereto, which notice of change of address or fax number shall not become effective, however, until the actual receipt thereof by the other parties.

# Article X.

## INDEMNIFICATION

10.01     **Seller's Indemnity**.  Seller covenants and agrees to indemnify and save and hold Buyer harmless at all times after the Closing in respect of any and all liabilities, actions, suits, proceedings, demands, assessments, judgments, costs and expenses, including attorneys' fees, whether known or unknown, disclosed or undisclosed, arising from any misrepresentation, breach of warranty or nonfulfillment of any agreement on the part of Seller under this Agreement, or in any certificate or other instruments or agreements provided for in this Agreement.

10.02     **Buyer's Indemnity**.  Buyer covenants and agrees to indemnify and save and hold Seller harmless at all times after the Closing in respect of any and all liabilities, actions, suits, proceedings, demands, assessments, judgments, costs and expenses, including attorneys' fees, whether known or unknown, disclosed or undisclosed, arising from any

misrepresentation, breach of warranty or nonfulfillment of any agreement on the part of Buyer under this Agreement, or in any certificate or other instruments or agreements provided for in this Agreement.

10.03    **Notice of Indemnity**. The indemnified party shall provide the indemnifying party notice of any such claims of liability with reasonable promptness and the indemnifying party, at its election, shall have the right of defense in such proceedings, by counsel of its own choosing, at the indemnifying party's expense. The indemnified party shall cooperate fully in all respects with the indemnifying party in any such defense, including, without limitation, by making available to the indemnifying party all pertinent information under the control of the indemnified party. If the indemnifying party does not notify the indemnified party within ten (10) days of the indemnified party's notice to the indemnifying party of a potential claim that the indemnifying party will defend the same, or should the indemnifying party fail to file any answer or pleading at least five (5) days before the same is due, the indemnified party may defend or settle such claim or action in such manner as the indemnified party deems appropriate, in its sole discretion. If the indemnifying party so notifies the indemnified party concurrently with the indemnifying party's notice of election to defend, the indemnifying party may defend, but not settle, a claim without waiving its right to assert that such claim is not subject to the indemnity agreements in this Article 10. If the indemnifying party elects to defend a claim, the indemnified party may, at the indemnified party's expense, participate in such matter with counsel of the indemnified party's own choosing.

# Article XI.

## TERMINATION

11.01    **Termination In Absence Of A Default**.  The Agreement may be terminated at any time by the written agreement of Seller and Buyer.  The Agreement will terminate automatically and without notice to the other parties upon the closing of the sale of the Assets, or any part of the Assets, to a party other than Buyer.  Any party may terminate the Agreement by providing written notice to the other parties that one or more of the conditions precedent to Closing is not satisfied as of the date for Closing set forth in Article 5 above.  In the event of the termination of this Agreement by either party pursuant to this Article 11.01, all amounts transferred by Buyer to Seller pursuant to this Agreement, including the Deposit, shall be returned by Seller to Buyer within five (5) business days thereafter.

11.02    **Termination As A Result Of A Default**.  If a party breaches any covenant or representation or is otherwise in default under the terms of the Agreement, the other party may terminate the Agreement by providing written notice to the other party and may assert any rights or remedies resulting from the default.

12

# Article XII.

## MISCELLANEOUS

12.01   **Further Assurances**. Each party shall, at the request of the other, at any time and from time to time following the Closing hereunder, execute and deliver to the requesting party all such further instruments as may be reasonably necessary or appropriate in order to more effectively assign, transfer and convey to Buyer the Assets, or to perfect or record Buyer's title to or interest in the Assets, or otherwise carry out the provisions of this Agreement.

12.02   **Governing Law**. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, without reference to conflict of law principles, and except as superseded by applicable federal laws.

12.03   **Bankruptcy Court Jurisdiction**.  The resolution of any and all disputes between the parties herein concerning the Assets or this Agreement shall be resolved by the Bankruptcy Court.

12.04   **Binding Effect**. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, successors, personal representatives, and permitted assigns.

12.05   **Arms Length Transaction**. The Transaction, and the relationship between Seller and Buyer, and their respective agents, is wholly "arms length."

12.06   **Time of Essence**. Time is of the essence of this Agreement and all of the terms, provisions, covenants and conditions hereof.

12.07   **Cautions**. The captions appearing at the commencement of the sections hereof are descriptive only and for convenience in reference to this Agreement and in no way whatsoever define, limit or describe the scope or intent of this Agreement, nor in any way affect this Agreement.

12.08   **Fees and Expenses**. The parties hereto shall each bear their own expenses, including but not limited to legal fees, incident to the negotiation and preparation of this Agreement and the consummation of the transactions contemplated hereby.

12.09   **Limitation of Trustee's Liability**.  Any obligation or liability whatsoever of the Trustee that may arise at any time under this Agreement shall be solely in his official capacity as trustee and not in his personal capacity, and shall be satisfied, if at all, out of the assets vested in the Debtor's estate.  No such obligation or liability shall be personally binding upon the Trustee or of any of his agents, employees, representative or professionals, regardless of whether such obligation of liability is in the nature of contract, tort, or otherwise, and no resort for the enforcement thereof shall ever be had to any or all of their property or assets

13

12.10 **Entire Agreement**. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements, representations, and understandings of the parties. No additions to or modification of this Agreement shall be binding unless executed in writing by all the parties. Except as may be otherwise provided in this Agreement, no waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver, and no waiver shall be binding unless evidenced by an instrument in writing executed by the party making the waiver.

12.11 **Execution in Counterparts**. This Agreement may be executed by the parties in multiple counterparts, which taken together shall be deemed one original document.

12.12 **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement the day and year first above written.

DAVID K. GOTTLIEB, AS CHAPTER 7
TRUSTEE FOR THE ESTATE OF
PASSPORT INTERNATIONAL
ENTERTAINMENT, LLC

_____ 1/4/2010

David K. Gottlieb
Chapter 7 Trustee

CALPARTNERS, LLC

By_____ 1/4/2010

Irv Holender
Managing Member

14

**SCHEDULE 1.01**

(Motion Pictures)

100 Years Of Comedy
100 Years Of Horror
50 Years: The Best of Hollywood
A Century of Black Cinema
A Century of Science Fiction
A to Zeppelin: The Unauthorized Story of Led Zeppelin
Academy Award Winners: 1972-2002
Academy Award Winners: First 50 Years
Andy Williams Sings the Hits
Becoming Queen
Bettie Page: The Girl in the Leopard Print Bikini
Billy Eckstine Sings and Dizzy Gillespie Swings
Bobby Darin Singing At His Best
Brad Pitt & Jennifer Aniston: Hollywood's Couple of The Year
Brad Pitt: Hollywood Hunk
Brian Epstein: Inside the Fifth Beatle
British Invasion Rarites
Bruce Lee: The Immortal Dragon
Cab Calloway Swinging At His Best
California Rock
Cash Poker
Christmas From Hollywood
Clint Eastwood: Star Power
Close Encounters Proof of Alien Contact
Count Basie Swinging At His Best
Cutting Edge Comedians of the '60s & '70s
Dean Martin: Encore
Dean Martin: Everybody Loves Somebody Sometime
Dean Martin: Memories Are Made Of This
Dean Martin & Jerry Lewis Collection: Colgate Comedy Hour
Disco: Spinning The Story
Dorothy Dandridge: An American Beauty
Dorothy Dandridge Singing At Her Best
Duke Ellington Swinging At His Best
Eddie Fisher Sings The Hits
Elvis: A 50th Anniversary Celebration
Eddy Arnold Singing the Hits
Fleetwood Mac: Unbroken Chain
Frank Sinatra Memorial
Frank Sinatra: They Were Very Good Years
Getting The Knack
Great Entertainers: Frank Sinatra Singing With Friends

1

Great Entertainers: The Show Stoppers
Hispanic Hollywood
Hit Celebrity TV Commercials
Hollywood Couples
Hollywood Musicals
Hollywood Remembers The Leading Ladies
Hollywood Remembers The Leading Men
Hollywood Rivals
Hollywood Rock 'N' Rolls the 50's
Hollywood Singing and Dancing
Hollywood Vs The Paparazzi
Inside The Golden Statue
Inside The Marx Brothers
Jazz Classic Series
Jazz Giants of the 20th Century
Jimi Hendrix: The Uncut Story
Johnny Cash Singing At His Best
Keanu Reeves: Journey To Success
Kidman: & Cruise: Hollywood's Most Glamorous Couple
King: Man of Peace in a Time of War
Kings of the Swing Era
Kiss: Live In Vegas
Knack, The
Liberace Show, The
Lionel Hamption: Swinging At His Best
Louis Armstrong: 100th Anniversary
Lullaby of Harlem
Madonna: The Name of the Game
Magic From The Midway
Making of Series, The
Mahalia Jackson Collection, The
Many Faces of Dracula, The
Many Faces of Zorro, The
Muhammad Al: The Greatest
Mummy,The
Nat King Cole: Encore
Nat King Cole: Stardust Memories
Ocean's Eleven Story, The
One for The Money: The Birth Of Rock 'N' Roll
Oscar's Black Odyssey: From Hattie To Halle
Pamela Anderson Lee
Passions of Howard Hughes, The
Patti Page Sings The Hits
Pearl Harbor: A Day of Infamy
Peggy Lee Singing At Her Best
Perry Como Singing At His Best

2

Poker Parlor
Portrait of Leonardo: In His Own Words
Remarkable Women of The 20th Century
Rock 'N' Roll Greats: Firefall
Rock 'N' Roll Greats: Iron Butterfly
Rock 'N' Roll Greats: John Kay & Steppenwolf
Rock 'N' Roll Greats: Mark Farner
Rock 'N' Roll Greats: Mitch Ryder and the Detroit Wheels
Rock 'N' Roll Greats: Rare Earth
Rock 'N' Roll Greats: Starship Featuring Mickey Thomas
Rolling Stones – Just For The Record
Ronald Reagan: The Hollywood Years – the Presidential Years
Rosemary Clooney Singing At Her Best
Sammy Davis Jr. Singing At His Best
Sarah Vaughan & Other Jazz Divas
Sinatra Singing At His Best
Sing Brother Sing
Sixties Rock
Sixties Soft Rocks
Spend The Holidays With Liberace
Star Wars Vs. Star Trek
Stars of Star Wars: Interviews With The Cast
Striptease: The Greatest Exotic Dancers
Surfing USA
Taboo: The Beginning of Erotica Cinema
Television: The First Fifty Years
The 50 Worst Movies Ever Made
The Abbott & Costello Comedy Collection
The Beatles in Washington D.C.
The Beatles: A Long And Winding Road
The Best of Film Noir
The Best of Rock 'N' Roll Greats
The Best of Hollywood
The Blues Greats
The Cecil B. Demille Classics Collection
The Great Man: W.C. Fields
The Who: The Vegas Job
TV in Black: The First Fifty Years
Ultimate Poker Babes, The
Ultimate Poker Challenge
Ultimate Poker Challenge: Season 2
Ultimate Poker Challenge: Season 3
Unforgettable Nat King Cole, The
Van Halen Story: The Early Years, The
We Remember Marilyn
Zeta-Jones & Douglas: Hollywood's Hottest Couple

3

**SCHEDULE 1.01(i)**

(Distribution Agreements)

Name of non-Debtor party to the Distribution Agreement:

1.      Aggregator Ltd.
2.      Alliance
3.      Arrow Films
4.      ARTV
5.      Beckman Visual Publishing.
6.      Bitwin
7.      Black Hill Pictures GmbH
8.      Bravo!
9.      Briggs Digital Media
10.     BSKYB
11.     Cdiscount
12.     Cente Service Corporation
13.     C'est La Vie
14.     Cine Video & TV S.A.
15.     CineCinema
16.     Columbia TriStar Films B.V.
17.     Comstock Group
18.     Czech TV,
19.     Da Works
20.     Dall'Angelo Pic.
21.     Daro Film Distribution
22.     Delta Entertainment
23.     Delta Music
24.     DEP
25.     Discovery Communications
26.     Dom Multimedia
27.     DreamTime Entertainment
28.     DVD Ltd.
29.     Eagle Rock Entertainment
30.     EIM
31.     Ellesco International NV,
32.     Ergo Brains
33.     EuroVideo
34.     Fein Impex
35.     Firefly (Telstar)
36.     Flashstar (br)
37.     Flextech
38.     Footprint
39.     Foxtel
40.     Fox International Italy

1

| | |
|---|---|
| 41. | Funai |
| 42. | GloboSat |
| 43. | Goldueva |
| 44. | GPS |
| 45. | Group Archambault |
| 46. | History Channel |
| 47. | History Channel UK |
| 48. | ILC |
| 49. | Imavision |
| 50. | in Demand |
| 51. | IMC |
| 52. | In-Akustik |
| 53. | Infini Medias Distrib Corp. |
| 54. | Intra |
| 55. | IPS |
| 56. | ITV / Carlton TV |
| 57. | Jaguar Distribution |
| 58. | Just Entertainment Services |
| 59. | Jetix |
| 60. | JoongAng |
| 61. | JRB |
| 62. | LaSexta |
| 63. | KOCH Entertainment Distribution LLC |
| 64. | M3 |
| 65. | Madman Ent. |
| 66. | Magnolia |
| 67. | MDC |
| 68. | Medallion Media |
| 69. | Media Broadcast |
| 70. | Media-Future BVBA |
| 71. | MG&A |
| 72. | MGE, Inc. |
| 73. | MisLabel |
| 74. | Media Future |
| 75. | Movie Management |
| 76. | Movie Media |
| 77. | MRA Ent. |
| 78. | Much Music |
| 79. | Multimedia Intl |
| 80. | Multithematiques |
| 81. | MusicquePlus |
| 82. | NBC Universal Global Networks Germany |
| 83. | NBC Universal Int'l GmbH |
| 84. | New Films 8484 |
| 85. | Nine Network |
| 86. | Ninth Dimension |

2

87.   Novi
88.   Now On Media
89.   Oasis Int'l
90.   Odyssee
91.   Ovacao
92.   Panorama
93.   Pantalla Insurgentes
94.   Papillon Film
95.   PBS
96.   Play On
97.   Poker Media PTY Ltd
98.   Power Insight
99.   Prime Entertainment Group
100.  PrimeTime
101.  Rajon
102.  Sanctuary Records Group
103.  Sea Movies
104.  Scanbox
105.  Showtime
106.  Simpel Media
107.  Slam Music
108.  Softmachine
109.  Starz
110.  Studio Canal Video
111.  Studio U-7 TV
112.  Sun Media Co., Ltd.
113.  Swift
114.  Tele Melody
115.  Telewizja Polska
116.  Telstar
117.  TF1 Video
118.  The History Channel GmbH & Co.
119.  The Premium Movie Partnership
120.  Tohokushinsha
121.  Track Media
122.  Trama
123.  Trouble
124.  TV Azteca
125.  TV Limburg
126.  Umbrella Entertainment
127.  Universal Uk
128.  Universal Pictures
129.  UPC TV
130.  VCL
131.  Vellavision
132.  Video Film Express

3

133.    Video Mercury
134.    Videx Int'l
135.    Virgin Media Television
136.    Vision TV
137.    VRT
138.    W9
139.    Well Go USA, Inc.
140.    Wienerworld
141.    Wild Side
142.    WLIW
143.    XYZ Entertainment
144.    Zenite Art Eng

4

# SCHEDULE 1.02

## (Assigned Contracts)

|  | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 1. | Aggregator Ltd. | Distribution Agreement | $0 |
| 2. | Alliance | Distribution Agreement | $0 |
| 3. | Arc Music Group | Copyright License | $0 |
| 4. | Arrow Films | Distribution Agreement | $0 |
| 5. | ARTV | Distribution Agreement | $0 |
| 6. | Atlantic Music Corporation | Copyright License | $0 |
| 7. | Barton Music & Affiliates | Copyright License | $0 |
| 8. | Beckman Visual Publishing. | Distribution Agreement | $0 |
| 9. | Benny Davis Music | Copyright License | $0 |
| 10. | Bitwin | Distribution Agreement | $0 |
| 11. | Black Hill Pictures GmbH | Distribution Agreement | $0 |
| 12. | BMG Film & Television Music | Copyright License | $0 |
| 13. | BMG Music Publishing | Copyright License | $0 |
| 14. | Bob Dylan Music Co. | Copyright License | $0 |
| 15. | Bourne Co. | Copyright License | $0 |
| 16. | Bravo! | Distribution Agreement | $0 |
| 17. | Briggs Digital Media | Distribution Agreement | $0 |
| 18. | BSKYB | Distribution Agreement | $0 |
| 19. | Bug Music Inc. | Copyright License | $0 |
| 20. | Bulls Eye Music | Copyright License | $0 |
| 21. | Carlin America Inc. | Copyright License | $0 |

1

| | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 22. | Cdiscount | Distribution Agreement | $0 |
| 23. | Cente Service Corporation | Distribution Agreement | $0 |
| 24. | C'est La Vie | Distribution Agreement | $0 |
| 25. | Charlie Deitcher Productions | Copyright License | $0 |
| 26. | Cherio Corporation | Copyright License | $0 |
| 27. | Cherry Lane Music Publishing | Copyright License | $0 |
| 28. | Chrysalis Music Group Inc. | Copyright License | $0 |
| 29. | Cine Video & TV S.A. | Distribution Agreement | $0 |
| 30. | CineCinema | Distribution Agreement | $0 |
| 31. | Columbia TriStar Films B.V. | Distribution Agreement | $0 |
| 32. | Comstock Group | Distribution Agreement | $0 |
| 33. | Criterion Music Corporation | Copyright License | $0 |
| 34. | Czech TV, | Distribution Agreement | $0 |
| 35. | Da Works | Distribution Agreement | $0 |
| 36. | Dall'Angelo Pic. | Distribution Agreement | $0 |
| 37. | Daro Film Distribution | Distribution Agreement | $0 |
| 38. | Delta Entertainment | Distribution Agreement | $0 |
| 39. | Delta Music | Distribution Agreement | $0 |
| 40. | DEP | Distribution Agreement | $0 |
| 41. | Discovery Communications | Distribution Agreement | $0 |
| 42. | Dom Multimedia | Distribution Agreement | $0 |
| 43. | DreamTime Entertainment | Distribution Agreement | $0 |
| 44. | DVD Ltd. | Distribution Agreement | $0 |

2

|  | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 45. | Eagle Rock Entertainment | Distribution Agreement | $0 |
| 46. | Edwin H. Morris & Co. | Copyright License | $0 |
| 47. | EIM | Distribution Agreement | $0 |
| 48. | Ellesco International NV, | Distribution Agreement | $0 |
| 49. | EMI Music Publishing | Copyright License | $0 |
| 50. | Ergo Brains | Distribution Agreement | $0 |
| 51. | EuroVideo | Distribution Agreement | $0 |
| 52. | Fantasy INC | Copyright License | $0 |
| 53. | Fein Impex | Distribution Agreement | $0 |
| 54. | Firefly (Telstar) | Distribution Agreement | $0 |
| 55. | Flashstar (br) | Distribution Agreement | $0 |
| 56. | Flextech | Distribution Agreement | $0 |
| 57. | Footprint | Distribution Agreement | $0 |
| 58. | Four Jay's Music Publishing Co. | Copyright License | $0 |
| 59. | Fox International Italy | Distribution Agreement | $0 |
| 60. | Foxtel | Distribution Agreement | $0 |
| 61. | Fred Ahlert Music Group | Copyright License | $0 |
| 62. | Funai | Distribution Agreement | $0 |
| 63. | Gil Music Corp. | Copyright License | $0 |
| 64. | GloboSat | Distribution Agreement | $0 |
| 65. | Goldueva | Distribution Agreement | $0 |
| 66. | GPS | Distribution Agreement | $0 |
| 67. | Group Archambault | Distribution Agreement | $0 |

3

|  | __Non-Debtor Party__ | __Contract Description__ | __Cure Claim__ |
|---|---|---|---|
| 68. | Grubman Industry PC | Copyright License | $0 |
| 69. | History Channel | Distribution Agreement | $0 |
| 70. | History Channel UK | Distribution Agreement | $0 |
| 71. | ILC | Distribution Agreement | $0 |
| 72. | Imavision | Distribution Agreement | $0 |
| 73. | IMC | Distribution Agreement | $0 |
| 74. | in Demand | Distribution Agreement | $0 |
| 75. | In-Akustik | Distribution Agreement | $0 |
| 76. | Infini Medias Distrib Corp. | Distribution Agreement | $0 |
| 77. | Integrated Copyright Grp Inc. | Copyright License | $0 |
| 78. | International Music Services | Copyright License | $0 |
| 79. | Intra | Distribution Agreement | $0 |
| 80. | IPS | Distribution Agreement | $0 |
| 81. | ITV / Carlton TV | Distribution Agreement | $0 |
| 82. | Jaguar Distribution | Distribution Agreement | $0 |
| 83. | Jetix | Distribution Agreement | $0 |
| 84. | JoongAng | Distribution Agreement | $0 |
| 85. | JRB | Distribution Agreement | $0 |
| 86. | Julian Stearns Arena Music | Copyright License | $0 |
| 87. | Just Entertainment Services | Distribution Agreement | $0 |
| 88. | KOCH Entertainment Distribution LLC | Distribution Agreement | $0 |
| 89. | Larry Spier Inc. | Copyright License | $0 |
| 90. | LaSexta | Distribution Agreement | $0 |

4

| | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 91. | Law Offices of George E. Regis | Copyright License | $0 |
| 92. | M. William Krasilovsky | Copyright License | $0 |
| 93. | M3 | Distribution Agreement | $0 |
| 94. | Madman Ent. | Distribution Agreement | $0 |
| 95. | Magnolia | Distribution Agreement | $0 |
| 96. | Manatt Phelps & Phillips LLP | Copyright License | $0 |
| 97. | MDC | Distribution Agreement | $0 |
| 98. | Medallion Media | Distribution Agreement | $0 |
| 99. | Media Broadcast | Distribution Agreement | $0 |
| 100. | Media Future | Distribution Agreement | $0 |
| 101. | Media-Future BVBA | Distribution Agreement | $0 |
| 102. | MG&A | Distribution Agreement | $0 |
| 103. | MGE, Inc. | Distribution Agreement | $0 |
| 104. | MisLabel | Distribution Agreement | $0 |
| 105. | Movie Management | Distribution Agreement | $0 |
| 106. | Movie Media | Distribution Agreement | $0 |
| 107. | MPL Music Publishing Inc. | Copyright License | $0 |
| 108. | MRA Ent. | Distribution Agreement | $0 |
| 109. | Much Music | Distribution Agreement | $0 |
| 110. | Multimedia Intl | Distribution Agreement | $0 |
| 111. | Multithematiques | Distribution Agreement | $0 |
| 112. | Music Sales Corporation | Copyright License | $0 |
| 113. | MusiquePlus | Distribution Agreement | $0 |

5

|  | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 114. | NBC Universal Global Networks Germany | Distribution Agreement | $0 |
| 115. | NBC Universal Int'l GmbH | Distribution Agreement | $0 |
| 116. | New Films 8484 | Distribution Agreement | $0 |
| 117. | Next Decade Entert. Inc. | Copyright License | $0 |
| 118. | Nine Network | Distribution Agreement | $0 |
| 119. | Ninth Dimension | Distribution Agreement | $0 |
| 120. | Novi | Distribution Agreement | $0 |
| 121. | Now On Media | Distribution Agreement | $0 |
| 122. | Oasis Int'l | Distribution Agreement | $0 |
| 123. | Odyssee | Distribution Agreement | $0 |
| 124. | Ovacao | Distribution Agreement | $0 |
| 125. | Panorama | Distribution Agreement | $0 |
| 126. | Pantalla Insurgentes | Distribution Agreement | $0 |
| 127. | Papillon Film | Distribution Agreement | $0 |
| 128. | PBS | Distribution Agreement | $0 |
| 129. | Peer Music | Copyright License | $0 |
| 130. | Play On | Distribution Agreement | $0 |
| 131. | Poker Media PTY Ltd | Distribution Agreement | $0 |
| 132. | Power Insight | Distribution Agreement | $0 |
| 133. | Prime Entertainment Group | Distribution Agreement | $0 |
| 134. | PrimeTime | Distribution Agreement | $0 |
| 135. | Rajon | Distribution Agreement | $0 |
| 136. | Rhino Entertainment | Copyright License | $0 |

6

| | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 137. | Rodgers & Hammerstein Org. | Copyright License | $0 |
| 138. | Sanctuary Records Group | Distribution Agreement | $0 |
| 139. | Scanbox | Distribution Agreement | $0 |
| 140. | Sea Movies | Distribution Agreement | $0 |
| 141. | Shapiro Bernstein & Co. Inc. | Copyright License | $0 |
| 142. | Showtime | Distribution Agreement | $0 |
| 143. | Simpel Media | Distribution Agreement | $0 |
| 144. | Slam Music | Distribution Agreement | $0 |
| 145. | Softmachine | Distribution Agreement | $0 |
| 146. | Songs of Windswept Pacific | Copyright License | $0 |
| 147. | Songwriters Guild of America | Copyright License | $0 |
| 148. | Starz | Distribution Agreement | $0 |
| 149. | Studio Canal Video | Distribution Agreement | $0 |
| 150. | Studio U-7 TV | Distribution Agreement | $0 |
| 151. | Sun Media Co., Ltd. | Distribution Agreement | $0 |
| 152. | Swift | Distribution Agreement | $0 |
| 153. | TCA Television | Copyright License | $0 |
| 154. | Tele Melody | Distribution Agreement | $0 |
| 155. | Telewizja Polska | Distribution Agreement | $0 |
| 156. | Telstar | Distribution Agreement | $0 |
| 157. | TF1 Video | Distribution Agreement | $0 |
| 158. | The Famous Music Publishing | Copyright License | $0 |
| 159. | The Harry Fox Agency Inc. | Copyright License | $0 |

| | Non-Debtor Party | Contract Description | Cure Claim |
|---|---|---|---|
| 160. | The History Channel GmbH & Co. | Distribution Agreement | $0 |
| 161. | The Premium Movie Partnership | Distribution Agreement | $0 |
| 162. | The Richmond Organization | Copyright License | $0 |
| 163. | Tohokushinsha | Distribution Agreement | $0 |
| 164. | Track Media | Distribution Agreement | $0 |
| 165. | Trama | Distribution Agreement | $0 |
| 166. | Trio / Quartet | Copyright License | $0 |
| 167. | Trouble | Distribution Agreement | $0 |
| 168. | Troup London Music | Copyright License | $0 |
| 169. | TV Azteca | Distribution Agreement | $0 |
| 170. | TV Limburg | Distribution Agreement | $0 |
| 171. | Umbrella Entertainment | Distribution Agreement | $0 |
| 172. | Universal Music Publishing | Copyright License | $0 |
| 173. | Universal Pictures | Distribution Agreement | $0 |
| 174. | Universal Polygram Int'l Publi | Copyright License | $0 |
| 175. | Universal Uk | Distribution Agreement | $0 |
| 176. | UPC TV | Distribution Agreement | $0 |
| 177. | VCL | Distribution Agreement | $0 |
| 178. | Vellavision | Distribution Agreement | $0 |
| 179. | Video Film Express | Distribution Agreement | $0 |
| 180. | Video Mercury | Distribution Agreement | $0 |
| 181. | Videx Int'l | Distribution Agreement | $0 |
| 182. | Virgin Media Television | Distribution Agreement | $0 |

8

|  | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 183. | Vision TV | Distribution Agreement | $0 |
| 184. | VRT | Distribution Agreement | $0 |
| 185. | W9 | Distribution Agreement | $0 |
| 186. | Warner Chappel Music | Copyright License | $0 |
| 187. | Well Go USA, Inc. | Distribution Agreement | $0 |
| 188. | Wienerworld | Distribution Agreement | $0 |
| 189. | Wild Side | Distribution Agreement | $0 |
| 190. | Winogradsky Company | Copyright License | $0 |
| 191. | WLIW | Distribution Agreement | $0 |
| 192. | XYZ Entertainment | Distribution Agreement | $0 |
| 193. | Zenite Art Eng | Distribution Agreement | $0 |

# SCHEDULE 3.02

## (Litigation/Disputed Rights)

|  | TITLE | CLAIMANT |
|---|---|---|
| 1. | Abbott and Costello Show (and related movies, photographs and memorabilia) | TCA Television Corp. |
| 2. | Dean Martin, Encore | Dean Martin Family Trust |
| 3. | Dean Martin, Everybody Loves Somebody Sometime | Dean Martin Family Trust |
| 4. | Dean Martin, Memories Are Made Of This | Dean Martin Family Trust |

1

# EXHIBIT B

# ASSIGNED CONTRACTS

|     | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
| --- | --- | --- | --- |
| 1. | Aggregator Ltd. | Distribution Agreement | $0 |
| 2. | Alliance | Distribution Agreement | $0 |
| 3. | Arc Music Group | Copyright License | $0 |
| 4. | Arrow Films | Distribution Agreement | $0 |
| 5. | ARTV | Distribution Agreement | $0 |
| 6. | Atlantic Music Corporation | Copyright License | $0 |
| 7. | Barton Music & Affiliates | Copyright License | $0 |
| 8. | Beckman Visual Publishing. | Distribution Agreement | $0 |
| 9. | Benny Davis Music | Copyright License | $0 |
| 10. | Bitwin | Distribution Agreement | $0 |
| 11. | Black Hill Pictures GmbH | Distribution Agreement | $0 |
| 12. | BMG Film & Television Music | Copyright License | $0 |
| 13. | BMG Music Publishing | Copyright License | $0 |
| 14. | Bob Dylan Music Co. | Copyright License | $0 |
| 15. | Bourne Co. | Copyright License | $0 |
| 16. | Bravo! | Distribution Agreement | $0 |
| 17. | Briggs Digital Media | Distribution Agreement | $0 |
| 18. | BSKYB | Distribution Agreement | $0 |
| 19. | Bug Music Inc. | Copyright License | $0 |
| 20. | Bulls Eye Music | Copyright License | $0 |
| 21. | Carlin America Inc. | Copyright License | $0 |
| 22. | Cdiscount | Distribution Agreement | $0 |

1

| | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 23. | Cente Service Corporation | Distribution Agreement | $0 |
| 24. | C'est La Vie | Distribution Agreement | $0 |
| 25. | Charlie Deitcher Productions | Copyright License | $0 |
| 26. | Cherio Corporation | Copyright License | $0 |
| 27. | Cherry Lane Music Publishing | Copyright License | $0 |
| 28. | Chrysalis Music Group Inc. | Copyright License | $0 |
| 29. | Cine Video & TV S.A. | Distribution Agreement | $0 |
| 30. | CineCinema | Distribution Agreement | $0 |
| 31. | Columbia TriStar Films B.V. | Distribution Agreement | $0 |
| 32. | Comstock Group | Distribution Agreement | $0 |
| 33. | Criterion Music Corporation | Copyright License | $0 |
| 34. | Czech TV, | Distribution Agreement | $0 |
| 35. | Da Works | Distribution Agreement | $0 |
| 36. | Dall'Angelo Pic. | Distribution Agreement | $0 |
| 37. | Daro Film Distribution | Distribution Agreement | $0 |
| 38. | Delta Entertainment | Distribution Agreement | $0 |
| 39. | Delta Music | Distribution Agreement | $0 |
| 40. | DEP | Distribution Agreement | $0 |
| 41. | Discovery Communications | Distribution Agreement | $0 |
| 42. | Dom Multimedia | Distribution Agreement | $0 |
| 43. | DreamTime Entertainment | Distribution Agreement | $0 |
| 44. | DVD Ltd. | Distribution Agreement | $0 |
| 45. | Eagle Rock Entertainment | Distribution Agreement | $0 |

2

|     | __Non-Debtor Party__ | __Contract Description__ | __Cure Claim__ |
| --- | --- | --- | --- |
| 46. | Edwin H. Morris & Co. | Copyright License | $0 |
| 47. | EIM | Distribution Agreement | $0 |
| 48. | Ellesco International NV, | Distribution Agreement | $0 |
| 49. | EMI Music Publishing | Copyright License | $0 |
| 50. | Ergo Brains | Distribution Agreement | $0 |
| 51. | EuroVideo | Distribution Agreement | $0 |
| 52. | Fantasy INC | Copyright License | $0 |
| 53. | Fein Impex | Distribution Agreement | $0 |
| 54. | Firefly (Telstar) | Distribution Agreement | $0 |
| 55. | Flashstar (br) | Distribution Agreement | $0 |
| 56. | Flextech | Distribution Agreement | $0 |
| 57. | Footprint | Distribution Agreement | $0 |
| 58. | Four Jay's Music Publishing Co. | Copyright License | $0 |
| 59. | Fox International Italy | Distribution Agreement | $0 |
| 60. | Foxtel | Distribution Agreement | $0 |
| 61. | Fred Ahlert Music Group | Copyright License | $0 |
| 62. | Funai | Distribution Agreement | $0 |
| 63. | Gil Music Corp. | Copyright License | $0 |
| 64. | GloboSat | Distribution Agreement | $0 |
| 65. | Goldueva | Distribution Agreement | $0 |
| 66. | GPS | Distribution Agreement | $0 |
| 67. | Group Archambault | Distribution Agreement | $0 |
| 68. | Grubman Industry PC | Copyright License | $0 |

3

| | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 69. | History Channel | Distribution Agreement | $0 |
| 70. | History Channel UK | Distribution Agreement | $0 |
| 71. | ILC | Distribution Agreement | $0 |
| 72. | Imavision | Distribution Agreement | $0 |
| 73. | IMC | Distribution Agreement | $0 |
| 74. | in Demand | Distribution Agreement | $0 |
| 75. | In-Akustik | Distribution Agreement | $0 |
| 76. | Infini Medias Distrib Corp. | Distribution Agreement | $0 |
| 77. | Integrated Copyright Grp Inc. | Copyright License | $0 |
| 78. | International Music Services | Copyright License | $0 |
| 79. | Intra | Distribution Agreement | $0 |
| 80. | IPS | Distribution Agreement | $0 |
| 81. | ITV / Carlton TV | Distribution Agreement | $0 |
| 82. | Jaguar Distribution | Distribution Agreement | $0 |
| 83. | Jetix | Distribution Agreement | $0 |
| 84. | JoongAng | Distribution Agreement | $0 |
| 85. | JRB | Distribution Agreement | $0 |
| 86. | Julian Stearns Arena Music | Copyright License | $0 |
| 87. | Just Entertainment Services | Distribution Agreement | $0 |
| 88. | KOCH Entertainment Distribution LLC | Distribution Agreement | $0 |
| 89. | Larry Spier Inc. | Copyright License | $0 |
| 90. | LaSexta | Distribution Agreement | $0 |
| 91. | Law Offices of George E. Regis | Copyright License | $0 |

4

| | Non-Debtor Party | Contract Description | Cure Claim |
|---|---|---|---|
| 92. | M. William Krasilovsky | Copyright License | $0 |
| 93. | M3 | Distribution Agreement | $0 |
| 94. | Madman Ent. | Distribution Agreement | $0 |
| 95. | Magnolia | Distribution Agreement | $0 |
| 96. | Manatt Phelps & Phillips LLP | Copyright License | $0 |
| 97. | MDC | Distribution Agreement | $0 |
| 98. | Medallion Media | Distribution Agreement | $0 |
| 99. | Media Broadcast | Distribution Agreement | $0 |
| 100. | Media Future | Distribution Agreement | $0 |
| 101. | Media-Future BVBA | Distribution Agreement | $0 |
| 102. | MG&A | Distribution Agreement | $0 |
| 103. | MGE, Inc. | Distribution Agreement | $0 |
| 104. | MisLabel | Distribution Agreement | $0 |
| 105. | Movie Management | Distribution Agreement | $0 |
| 106. | Movie Media | Distribution Agreement | $0 |
| 107. | MPL Music Publishing Inc. | Copyright License | $0 |
| 108. | MRA Ent. | Distribution Agreement | $0 |
| 109. | Much Music | Distribution Agreement | $0 |
| 110. | Multimedia Intl | Distribution Agreement | $0 |
| 111. | Multithematiques | Distribution Agreement | $0 |
| 112. | Music Sales Corporation | Copyright License | $0 |
| 113. | MusiquePlus | Distribution Agreement | $0 |
| 114. | NBC Universal Global Networks Germany | Distribution Agreement | $0 |

5

| | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 115. | NBC Universal Int'l GmbH | Distribution Agreement | $0 |
| 116. | New Films 8484 | Distribution Agreement | $0 |
| 117. | Next Decade Entert. Inc. | Copyright License | $0 |
| 118. | Nine Network | Distribution Agreement | $0 |
| 119. | Ninth Dimension | Distribution Agreement | $0 |
| 120. | Novi | Distribution Agreement | $0 |
| 121. | Now On Media | Distribution Agreement | $0 |
| 122. | Oasis Int'l | Distribution Agreement | $0 |
| 123. | Odyssee | Distribution Agreement | $0 |
| 124. | Ovacao | Distribution Agreement | $0 |
| 125. | Panorama | Distribution Agreement | $0 |
| 126. | Pantalla Insurgentes | Distribution Agreement | $0 |
| 127. | Papillon Film | Distribution Agreement | $0 |
| 128. | PBS | Distribution Agreement | $0 |
| 129. | Peer Music | Copyright License | $0 |
| 130. | Play On | Distribution Agreement | $0 |
| 131. | Poker Media PTY Ltd | Distribution Agreement | $0 |
| 132. | Power Insight | Distribution Agreement | $0 |
| 133. | Prime Entertainment Group | Distribution Agreement | $0 |
| 134. | PrimeTime | Distribution Agreement | $0 |
| 135. | Rajon | Distribution Agreement | $0 |
| 136. | Rhino Entertainment | Copyright License | $0 |
| 137. | Rodgers & Hammerstein Org. | Copyright License | $0 |

6

|  | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 138. | Sanctuary Records Group | Distribution Agreement | $0 |
| 139. | Scanbox | Distribution Agreement | $0 |
| 140. | Sea Movies | Distribution Agreement | $0 |
| 141. | Shapiro Bernstein & Co. Inc. | Copyright License | $0 |
| 142. | Showtime | Distribution Agreement | $0 |
| 143. | Simpel Media | Distribution Agreement | $0 |
| 144. | Slam Music | Distribution Agreement | $0 |
| 145. | Softmachine | Distribution Agreement | $0 |
| 146. | Songs of Windswept Pacific | Copyright License | $0 |
| 147. | Songwriters Guild of America | Copyright License | $0 |
| 148. | Starz | Distribution Agreement | $0 |
| 149. | Studio Canal Video | Distribution Agreement | $0 |
| 150. | Studio U-7 TV | Distribution Agreement | $0 |
| 151. | Sun Media Co., Ltd. | Distribution Agreement | $0 |
| 152. | Swift | Distribution Agreement | $0 |
| 153. | TCA Television | Copyright License | $0 |
| 154. | Tele Melody | Distribution Agreement | $0 |
| 155. | Telewizja Polska | Distribution Agreement | $0 |
| 156. | Telstar | Distribution Agreement | $0 |
| 157. | TF1 Video | Distribution Agreement | $0 |
| 158. | The Famous Music Publishing | Copyright License | $0 |
| 159. | The Harry Fox Agency Inc. | Copyright License | $0 |
| 160. | The History Channel GmbH & Co. | Distribution Agreement | $0 |

7

|      | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|------|----------------------|--------------------------|----------------|
| 161. | The Premium Movie Partnership | Distribution Agreement | $0 |
| 162. | The Richmond Organization | Copyright License | $0 |
| 163. | Tohokushinsha | Distribution Agreement | $0 |
| 164. | Track Media | Distribution Agreement | $0 |
| 165. | Trama | Distribution Agreement | $0 |
| 166. | Trio / Quartet | Copyright License | $0 |
| 167. | Trouble | Distribution Agreement | $0 |
| 168. | Troup London Music | Copyright License | $0 |
| 169. | TV Azteca | Distribution Agreement | $0 |
| 170. | TV Limburg | Distribution Agreement | $0 |
| 171. | Umbrella Entertainment | Distribution Agreement | $0 |
| 172. | Universal Music Publishing | Copyright License | $0 |
| 173. | Universal Pictures | Distribution Agreement | $0 |
| 174. | Universal Polygram Int'l Publi | Copyright License | $0 |
| 175. | Universal Uk | Distribution Agreement | $0 |
| 176. | UPC TV | Distribution Agreement | $0 |
| 177. | VCL | Distribution Agreement | $0 |
| 178. | Vellavision | Distribution Agreement | $0 |
| 179. | Video Film Express | Distribution Agreement | $0 |
| 180. | Video Mercury | Distribution Agreement | $0 |
| 181. | Videx Int'l | Distribution Agreement | $0 |
| 182. | Virgin Media Television | Distribution Agreement | $0 |
| 183. | Vision TV | Distribution Agreement | $0 |

8

|  | **Non-Debtor Party** | **Contract Description** | **Cure Claim** |
|---|---|---|---|
| 184. | VRT | Distribution Agreement | $0 |
| 185. | W9 | Distribution Agreement | $0 |
| 186. | Warner Chappel Music | Copyright License | $0 |
| 187. | Well Go USA, Inc. | Distribution Agreement | $0 |
| 188. | Wienerworld | Distribution Agreement | $0 |
| 189. | Wild Side | Distribution Agreement | $0 |
| 190. | Winogradsky Company | Copyright License | $0 |
| 191. | WLIW | Distribution Agreement | $0 |
| 192. | XYZ Entertainment | Distribution Agreement | $0 |
| 193. | Zenite Art Eng | Distribution Agreement | $0 |

# EXHIBIT C

1   David B. Shemano (State Bar No. 176020)
    *dshemano@pwkllp.com*
2   PEITZMAN, WEG & KEMPINSKY LLP
    10100 Santa Monica Blvd., Suite 1450
3   Los Angeles, CA  90067
    Telephone: (310) 552-3100
4   Telecopier: (310) 552-3101

5   Proposed Attorney for David K. Gottlieb, Chapter 7 Trustee
    for the estate of Passport International Entertainment LLC



FILED & ENTERED

DEC 11 2009

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY espino    DEPUTY CLERK

7
8           **UNITED STATES BANKRUPTCY COURT**
9
            **CENTRAL DISTRICT OF CALIFORNIA**
10
            **SAN FERNANDO VALLEY DIVISION**

11  In re:                                   Case No. 1:08-BK-13319-GM
12
    PASSPORT INTERNATIONAL                   Chapter 7
13  ENTERTAINMENT LLC,
                                             **ORDER GRANTING APPLICATION OF**
14          Debtor.                          **THE CHAPTER 7 TRUSTEE TO EMPLOY**
                                             **COUNSEL RB CAPITAL, LLC AS SALES**
15                                           **AND MARKETING AGENT**
16                                           **NO HEARING REQUIRED PURSUANT TO**
                                             **LBR 2014-1(b)(1)(C)**
17

18          The Bankruptcy Court considered the Application of the Chapter 7 trustee to employ

19  Counsel RB Capital, LLC as Sales and Marketing Agent (the "Application") and the annexed

20  Declaration of Adam M. Reich (the "Reich Declaration") filed in support thereof.  Based upon the

21  record before the Bankruptcy Court, it appears that Counsel RB Capital, LLC ("Counsel RB") does

22  not hold or represent any interest adverse to the estate, that Counsel RB is a disinterested person, that

23  its employment is in the best interest of the estate, and that no hearing on the Application is required.

    Accordingly, it is hereby
24
            **ORDERED THAT:**
25
26          1.      David K. Gottlieb (the "Trustee"), chapter 7 trustee for the bankruptcy estate of

27  Passport International Entertainment LLC, is authorized to employ Counsel RB as his sales and

28  marketing agent pursuant to sections 327 and 328 of the Bankruptcy Code, on the terms and

Exhibit C - Page 60

1 | conditions set forth more fully in the Application and Reich Declaration.

2 |       2.      The Trustee is authorized to pay Counsel RB all amounts due upon the terms set forth

3 | in the Application without further Order of the Bankruptcy Court.  The Trustee shall file on Counsel

4 | RB's behalf a summary of proceeds realized and amounts paid within thirty (30) days after the

5 | completion of services performed by Counsel RB, which summary shall be in full satisfaction of any

6 | Bankruptcy Code requirements concerning the compensation of Counsel RB, including sections 327,

7 | 328, 330 and 331 of the Bankruptcy Code and Rule 2016 of the Federal Rules of Bankruptcy

8 | Procedure.

9 | ###

DATED: December 11, 2009

_____

United States Bankruptcy Judge

Exhibit C - Page 61



# COUNSEL
## RB CAPITAL LLC
PARTNERS IN SUCCESS®

November 4, 2009

David Gottlieb
Crowe Horwath LLP
15233 Ventura Boulevard, 9th Floor
Sherman Oaks, Ca  91403

Re:    <u>Passport Entertainment/Proposal Letter</u>

Dear David:

Pursuant to our recent discussions, we are pleased to submit the following proposal pursuant to which Counsel RB Capital, LLC (together, the "Sales Agent") will render asset recovery services ("Asset Recovery Services") to David Gottlieb, the chapter 7 trustee ("Trustee") appointed to administer the estate of Passport Entertainment, LLC ("Passport"). The Sales Agent is prepared to render such services under the following terms and conditions:

1.    <u>Services of the Sales Agent</u>.

    1.2.1    The Sales Agent will implement a marketing and sale program (the "Sale Program") designed to sell (i) a certain film library formerly owned by Passport, the titles of which are attached hereto as Exhibit "A" (the "Film Library"); and (ii) all other tangible personal property of the estate, including without limitation, machinery, equipment, raw stock and tape inventory (the "Non Film Library Assets").  The Asset Recovery Services shall include the following:

        (a) Inventorying the Film Library and Non Film Library Assets for sale.

        (b) Conducting a "Sealed Bid" offering of the Film Library and Non Film Library Assets.

    1.2.2

        (a)    For the sale of the Film Library and the Non Film Library Assets, the Passport estate will be charged a broker's commission equal to 6% of the gross sale proceeds.

        (b)    The Trustee will not be charged any expenses to conduct the Sale Program.



**2.     Miscellaneous.**

    2.1    <u>Dedicated Project Manager.</u>    The Sales Agent will provide the Trustee with a dedicated project manager assigned to the Sale Program.

        2.2.1    <u>Pricing</u>.    The parties will mutually agree upon pricing for the Film Library and Non Film Library Assets under which price the assets will not be sold.

    2.3    <u>Court Approval.</u>    The Sales Agent understands and agrees that its services and compensation are subject to the approval of the Bankruptcy Court.

    If these terms are acceptable, please execute and return.  Thank you for your consideration.

Very truly yours,
**Counsel RB Capital, LLC**

By:  _____
    Adam M. Reich, Co-CEO


<u>Accepted & Agreed:</u>

David Gottlieb, Chapter 7 Trustee
Appointed to administer the estate of Passport Entertainment, LLC


By:_____
Its:_____

COUNSEL
RB CAPITAL LLC
PARTNERS IN SUCCESS®

2.    Miscellaneous.

2.1    Dedicated Project Manager.  The Sales Agent will provide the Trustee with a dedicated project manager assigned to the Sale Program.

2.2.1    Pricing.    The parties will mutually agree upon pricing for the Film Library and Non Film Library Assets under which price the assets will not be sold.

2.3    Court Approval.    The Sales Agent understands and agrees that its services and compensation are subject to the approval of the Bankruptcy Court.

If these terms are acceptable, please execute and return.  Thank you for your consideration.

Very truly yours,
**Counsel RB Capital, LLC**

By:    _____

Adam M. Reich, Co-CEO

Accepted & Agreed:

David Gottlieb, Chapter 7 Trustee
Appointed to administer the estate of Passport Entertainment, LLC

By:    _____

Its:    CA - 7 Trustee

Counsel RB Capital LLC, 3435 Wilshire Blvd., Suite 1870, Los Angeles, CA  90010 U.S.A.
Voice 310-710-0809  Fax: 310-559-0924

Exhibit C - Page 64

# General Index

| Show Name | Category |
| --- | --- |
| 100 Years Of Comedy | Two-Hour Documentaries |
| 100 Years Of Horror | Two-Hour Documentaries |
| 100 Years Of Horror | Multiple Episode Series |
| 50 Years: The Best Of Hollywood | Two-Hour Documentaries |
| A Century Of Black Cinema | Two-Hour Documentaries |
| A Century Of Science Fiction | Two-Hour Documentaries |
| A Century Of Science Fiction | Multiple Episode Series |
| A to Zeppelin: The Unauthorized Story of Led Zeppelin | One-Hour Biographies |
| Academy Award Winners: 1972-2002 | Multiple Episode Series |
| Academy Award Winners: First 50 Years | Multiple Episode Series |
| Andy Williams Sings the Hits | Music Performances |
| Becoming Queen | One-Hour Biographies |
| Bettie Page: The Girl in the Leopard Print Bikini | One-Hour Biographies |
| Billy Eckstine Sings and Dizzy Gillespie Swings | Music Performances |
| Bobby Darin Singing At His Best | Music Performances |
| Brad Pitt & Jennifer Aniston: Hollywood's Couple Of The Year | One-Hour Documentaries |
| Brad Pitt: Hollywood Hunk | One-Hour Biographies |
| Brian Epstein: Inside the Fifth Beatle | One-Hour Biographies |
| British Invasion Rarites | Music Performances |
| Bruce Lee: The Immortal Dragon | One-Hour Biographies |
| Cab Calloway Swinging At His Best | Music Performances |
| California Rock | Music Performances |
| Cash Poker | Multiple Episode Series |
| Christmas From Hollywood | One-Hour Documentaries |
| Clint Eastwood: Star Power | One-Hour Biographies |
| Close Encounters Proof Of Alien Contact | One-Hour Documentaries |
| Count Basie Swinging At His Best | Music Performances |
| Cutting Edge Comedians of the '60s & '70s | Two-Hour Documentaries |
| Dean Martin: Encore | Music Performances |
| Dean Martin: Everybody Loves Somebody Sometime | Music Performances |
| Dean Martin: Memories Are Made Of This | Music Performances |
| Dean Martin & Jerry Lewis Collection: Colgate Comedy Hour | Multiple Episode Series |
| Disco: Spinning The Story | One-Hour Documentaries |
| Dorothy Dandridge: An American Beauty | One-Hour Biographies |
| Dorothy Dandridge Singing At Her Best | Music Performances |
| Duke Ellington Swinging At His Best | Music Performances |
| Eddie Fisher Sings The Hits | Music Performances |
| Elvis: A 50th Anniversary Celebration | One-Hour Biographies |
| Eddy Arnold Singing the Hits | Music Performances |
| Fleetwood Mac: Unbroken Chain | One-Hour Biographies |
| Frank Sinatra Memorial | One-Hour Biographies |
| Frank Sinatra: They Were Very Good Years | Multiple Episode Series |
| Getting The Knack | One-Hour Biographies |

■ ■ ■ ■ ■ ■ ■ ▒ ▒ ▒ ▒ ■ ■ ■ ■ ■ ■

Exhibit C - Page 65

| Show Name | Category |
|-----------|----------|
| Great Entertainers:  Frank Sinatra Singing With Friends | Music Performances |
| Great Entertainers: The Show Stoppers | Music Performances |
| Hispanic Hollywood | Two-Hour Documentaries |
| Hit Celebrity TV Commercials | Two-Hour Documentaries |
| Hollywood Couples | Multiple Episode Series |
| Hollywood Musicals | Multiple Episode Series |
| Hollywood Remembers The Leading Ladies | Multiple Episode Series |
| Hollywood Remembers The Leading Men | Multiple Episode Series |
| Hollywood Rivals | Multiple Episode Series |
| Hollywood Rocks 'N' Rolls the '50s | One-Hour Documentaries |
| Hollywood Singing and Dancing | Multiple Episode Series |
| Hollywood Vs The Paparazzi | One-Hour Documentaries |
| Inside The Golden Statue | One-Hour Documentaries |
| Inside The Marx Brothers | One-Hour Biographies |
| Jazz Classic Series | Multiple Episode Series |
| Jazz Giants of the 20th Century | Music Performances |
| Jimi Hendrix: The Uncut Story | Multiple Episode Series |
| Johnny Cash Singing At His Best | Music Performances |
| Keanu Reeves: Journey To Success | One-Hour Biographies |
| Kidman: & Cruise: Hollywood's Most Glamorous Couple | One-Hour Documentaries |
| King: Man of Peace in a Time of War | One-Hour Documentaries |
| Kings of the Swing Era | Music Performances |
| Kiss: Live In Vegas | Music Performances |
| Knack, The | One-Hour Biographies |
| Liberace Show, The | Music Performances |
| Lionel Hampton Swinging At His Best | Music Performances |
| Louis Armstrong: 100th Anniversary | One-Hour Documentaries |
| Lullaby Of Harlem | Music Performances |
| Madonna: The Name of the Game | One-Hour Biographies |
| Magic From The Midway | One-Hour Documentaries |
| Making Of Series, The | Multiple Episode Series |
| Mahalia Jackson Collection, The | Music Performances |
| Many Faces Of Dracula, The | One-Hour Documentaries |
| Many Faces Of Zorro, The | One-Hour Documentaries |
| Muhammad Ali: The Greatest | One-Hour Biographies |
| Mummy, The | One-Hour Documentaries |
| Nat King Cole: Encore | Music Performances |
| Nat King Cole: Stardust Memories | Music Performances |
| Ocean's Eleven Story, The | One-Hour Documentaries |
| One For The Money: The Birth Of Rock 'N' Roll | One-Hour Documentaries |
| Oscar's Black Odyssey:  From Hattie To Halle | One-Hour Documentaries |
| Pamela Anderson Lee | One-Hour Biographies |
| Passions Of Howard Hughes, The | One-Hour Biographies |
| Patti Page Sings The Hits | Music Performances |
| Pearl Harbor: A Day Of Infamy | One-Hour Documentaries |
| Peggy Lee Singing At Her Best | Music Performances |
| Perry Como Singing At His Best | Music Performances |

Exhibit C - Page 66

| Show Name | Category |
|---|---|
| Poker Parlor | Multiple Episode Series |
| Portrait Of Leonardo: In His Own Words | One-Hour Biographies |
| Remarkable Women Of The 20th Century | One-Hour Documentaries |
| Rock 'N' Roll Greats: Firefall | Music Performances |
| Rock 'N' Roll Greats: Iron Butterfly | Music Performances |
| Rock 'N' Roll Greats: John Kay & Steppenwolf | Music Performances |
| Rock 'N' Roll Greats: Mark Farner | Music Performances |
| Rock 'N' Roll Greats: Mitch Ryder and the Detroit Wheels | Music Performances |
| Rock 'N' Roll Greats: Rare Earth | Music Performances |
| Rock 'N' Roll Greats: Starship Featuring Mickey Thomas | Music Performances |
| Rolling Stones - Just For The Record | Multiple Episode Series |
| Ronald Reagan: The Hollywood Years - The Presidential Years | One-Hour Biographies |
| Rosemary Clooney Singing At Her Best | Music Performances |
| Sammy Davis Jr. Singing At His Best | Music Performances |
| Sarah Vaughan & Other Jazz Divas | Music Performances |
| Sinatra Singing At His Best | Music Performances |
| Sing Brother Sing | Music Performances |
| Sixties Rock | Music Performances |
| Sixties Soft Rocks | Music Performances |
| Spend The Holidays With Liberace | Music Performances |
| Star Wars Vs. Star Trek | One-Hour Documentaries |
| Stars Of Star Wars: Interviews With The Cast | One-Hour Documentaries |
| Striptease: The Greatest Exotic Dancers | One-Hour Documentaries |
| Surfing USA | One-Hour Documentaries |
| Taboo: The Beginning Of Erotica Cinema | One-Hour Documentaries |
| Television: The First Fifty Years | Two-Hour Documentaries |
| The 50 Worst Movies Ever Made | One-Hour Documentaries |
| The Abbott & Costello Comedy Collection | Multiple Episode Series |
| The Beatles In Washington D.C | Music Performances |
| The Beatles: A Long And Winding Road | Multiple Episode Series |
| The Best Of Film Noir | One-Hour Documentaries |
| The Best of Rock 'n' Roll Greats | Music Performances |
| The Best Of Hollywood | Multiple Episode Series |
| The Bible According To Hollywood | Two-Hour Documentaries |
| The Blues Greats | Music Performances |
| The Cecil B. Demille Classics Collection | Multiple Episode Series |
| The Great Man: W.C. Fields | Music Performances |
| The Who: The Vegas Job | One-Hour Biographies |
| TV In Black: The First Fifty Years | Two-Hour Documentaries |
| Ultimate Poker Babes, The | Multiple Episode Series |
| Ultimate Poker Challenge | Multiple Episode Series |
| Ultimate Poker Challenge : Season 2 | Multiple Episode Series |
| Ultimate Poker Challenge : Season 3 | Multiple Episode Series |
| Unforgettable Nat King Cole, The | Music Performances |
| Van Halen Story: The Early Years, The | One-Hour Biographies |
| We Remember Marilyn | Two-Hour Documentaries |
| Zeta-Jones & Douglas: Hollywood's Hottest Couple | One-Hour Documentaries |



Exhibit C - Page 67

# EXHIBIT D

1   David B. Shemano (State Bar No. 176020)
    *dshemano@pwkllp.com*
2   PEITZMAN, WEG & KEMPINSKY LLP
    10100 Santa Monica Blvd., Suite 1450
3   Los Angeles, CA  90067
    Telephone: (310) 552-3100
4   Telecopier: (310) 552-3101

5   Attorneys for David K. Gottlieb, Chapter 7 Trustee
    for the estate of Passport International Entertainment LLC

6

7

8                   **UNITED STATES BANKRUPTCY COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                  **SAN FERNANDO VALLEY DIVISION**

11  In re:                              Case No. 1:08-BK-13319-GM

12  PASSPORT INTERNATIONAL               Chapter 7
    ENTERTAINMENT LLC,
13                                       **ORDER AUTHORIZING AND**
                                         **APPROVING SALE OF DEBTOR'S**
14                  Debtor.              **ASSETS FREE AND CLEAR OF ALL**
                                         **LIENS, CLAIMS, ENCUMBRANCES**
15                                       **AND OTHER INTERESTS PURSUANT**
                                         **TO SECTIONS 363 AND 365 OF THE**
16                                       **BANKRUPTCY CODE**

17
                                         Date:   March 3, 2010
18                                       Time:   10:00 a.m.
                                         Place:  Courtroom 303
19                                               21041 Burbank Blvd.
                                                 Woodland Hills, CA
20

21

22          The Motion Of Chapter 7 Trustee For Order Authorizing And Approving Sale Of Debtor's

23  Assets Free And Clear Of All Liens, Claims, Encumbrances And Other Interests Pursuant To Sections

24  363 And 365 Of The Bankruptcy Code (the "Sale Motion"), filed by David K. Gottlieb, the chapter 7

25  trustee (the "Trustee") for the estate (the "Estate") of the above-captioned debtor (the "Debtor"),

26  came on for hearing before the Geraldine Mund, United States Bankruptcy Judge, on March 3, 2010,

27  at 10:00 a.m. (the "Hearing").  Appearances were made as reflected in the Bankruptcy Court's

28

                                          1

record.  Capitalized terms used herein shall have the meanings ascribed to them in the Sale Motion, unless otherwise defined.

After consideration of the Sale Motion and accompanying supporting papers, the arguments of counsel, the files and records in this chapter 7 case, and sufficient cause appearing, it is hereby

**ORDERED THAT**:

A.    The Trustee is authorized to sell, assign and transfer the Assets to Calpartners, LLC ("Buyer") for the purchase price of $110,000 pursuant to and in accordance with the asset purchase agreement entered into between the Trustee and Buyer (the "APA"), and when the sale, assignment and transfer is effective, the Trustee shall be deemed to have sold, assigned and transferred all of the Estate's rights, title and interest in and to the Assets to Buyer.  The Trustee is authorized to execute all documents and instruments and to take all actions necessary to effectuate the APA without further Order of the Court.

B.    The sale, assignment and transfer of the Assets to Buyer shall be free and clear of all Liens, except that the sale shall be subject to possessory liens.

C.    All Liens shall attach to the proceeds of the sale with the same priority, validity and enforceability, if any, as they had had against the Assets, which proceeds shall be held by the Trustee in a segregated account pending further Order of the Bankruptcy Court and subject to all defenses, objections, claims, counterclaims and rights of setoff and recoupment.

D.    The Trustee is hereby authorized to assume and assign, and the Trustee shall be deemed to have assumed and assigned, the Assigned Contracts to Buyer, effective as of the Closing of the sale.   There are no unpaid amounts or other obligations that must be paid or performed as a condition to such assumption and assignment, and the Estate is relieved from any liability for any breach of any of the Assigned Contracts occurring after the Closing pursuant to section 365(k) of the Bankruptcy Code.

E.    The Buyer acted in good faith in purchasing the Assets within the meaning of section 363(m) of the Bankruptcy Code.

F.    The Trustee is authorized to pay from the proceeds of the sale the commission due and owing to CRB.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

G.       The Court hereby retains jurisdiction to (i) enforce and implement the terms and

provisions of the APA and any supplemental documents or agreements executed in connection

therewith, (ii) compel delivery and payment of the consideration provided for under the APA, (iii)

resolve any disputes, controversies, or claims arising out of or relating to the APA, and (iv) interpret,

implement and enforce the provisions of this Order.

H.       This Order shall be effective immediately.


Dated:                                          _____

                                                UNITED STATES BANKRUPTCY JUDGE

Exhibit D - Page 70

| In re:  Passport International Entertainment LLC, | CHAPTER  7 |
|---|---|
| Debtor. | CASE NUMBER  1:08-bk-13319-GM |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**10100 Santa Monica Boulevard, Suite 1450, Los Angeles, CA  90067.**

**The foregoing document described <u>Notice of Motion and Motion of Chapter 7 Trustee For Order Authorizing and Approving Sale of Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363 and 365 of the Bankruptcy Code; Memorandum of Points and Authorities; Declarations of David K. Gottlieb and Adam P. Reich,</u> will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:**

**I.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>**February 5, 2010,**</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Mark S Blackman    MBlackman@AlpertBarr.Com
- Jeffrey Lee Costell    jlcostell@costell-law.com, aicornelius@costell-law.com;rhull@costell-law.com;hnugget@costell-law.com;mdiaz@costell-law.com;mharris@costell-law.com;scronin@costell-law.com
- David Keith Gottlieb    dkgtrustee@crowehorwath.com, CA5A@ecfcbis.com
- David Keith Gottlieb    dkgtrustee@horwathcal.com, CA5A@ecfcbis.com
- Richard Levy    rlevy@pryorcashman.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Steven M. Roth    steven.m.roth@irscounsel.treas.gov
- Gregory M Salvato    gsalvato@pmcos.com, calendar@pmcos.com
- David B Shemano    dshemano@pwkllp.com
- Adam M Starr    starra@gtlaw.com
- Kinh L Tran    klt@ltlcounsel.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                          **F 9013-3.1**

| In re:  Passport International Entertainment LLC, | CHAPTER  7 |
|---|---|
| Debtor. | CASE NUMBER  1:08-bk-13319-GM |

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **February 5, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**Served by U.S. Mail**
Hon. Geraldine Mund
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed*

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 5, 2010 | Matthew M. Dryer | /s/ Matthew M. Dryer |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

| In re:  Passport International Entertainment LLC, | CHAPTER  7 |
|---|---|
| Debtor. | CASE NUMBER  1:08-bk-13319-GM |

## Additional Service List (all by U. S. mail)

| **United States Trustee (SV)**<br>S Margaux Ross<br>21051 Warner Ctr Ln Ste 115<br>Woodland Hills, CA 91367 | **Counsel for Florence Pugliese**<br>Mark S. Blackman<br>Alpert, Barr & Grant<br>A Professional Law Corporation<br>6345 Balboa Blvd, Suite I-300<br>Encino, CA 91316-1523 | **Counsel for TCA Television Corp.**<br>Greg S. Bernstein<br>Greg S. Bernstein, PC<br>9601 Wilshire Blvd, Suite 240<br>Beverly Hills, CA 90210 |
|---|---|---|
| E1 Entertainment U.S.<br>Attn Michael Rosenberg, President<br>22 Harbor Park Drive<br>Port Washington, NY 11050 | **Counsel for Dean Martin Family Trust**<br>David W. Grace<br>10100 Santa Monica Blvd<br>Suite 2200<br>Los Angeles, CA 90067 | **Counsel for CalPartners**<br>Darrin Holender<br>Law Offices of Darrin Holender<br>449 S. Beverly Drive Suite 214<br>Beverly Hills, CA 90212 |
| **Counsel for Florence Pugliese,**<br>**Jeanette Pugliese and**<br>**Great Musical Treasures, LLC**<br>Allen Hyman<br>Law Offices of Allen Hyman<br>10737 Riverside Drive<br>North Hollywood, CA 91602 | Internal Revenue Service<br>Centralized Insolvency Operations<br>PO Box 21126<br>Philadelphia, PA 19114-0326 | **Counsel for Elvis Presley**<br>**Enterprises, Inc.**<br>Lance Jurich<br>Loeb & Loeb LLP<br>10100 Santa Monica Blvd<br>Los Angeles, CA 90067 |
| Rainbo Records<br>Attn Diana Morales<br>8960 Eton Ave<br>Canoga Park, CA 91304-1621 | Rainbo Records<br>Attn Steven Sheldon<br>8960 Eton Ave<br>Canoga Park, CA 91304-1621 | Adam Reich<br>Counsel RB Capital, LLC<br>10618 Pico Blvd.<br>Los Angeles, CA 90064 |
| **Counsel for TCA Television Corp.**<br>Edward A Ruttenberg<br>2049 Century Park East Ste 3110<br>Los Angeles, CA 90067-3274 | **Counsel for Elvis Presley**<br>**Enterprises, Inc.**<br>K. Luan Tran<br>1055 W. 7th Street, Suite 2820<br>Los Angeles, CA 90017 | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

**F 9013-3.1**